**William S. SKEEN and Alison Skeen, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 88–7061.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1988.

Decided Jan. 3, 1989.

---

94

David C. Aughtry, Atlanta, Ga., for petitioners-appellants.

David M. Moore, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a Tax Court decision upholding the Commissioner of Internal Revenue's disallowance of certain taxpayer deductions, assessment of additional interest, and levy of a negligence penalty. The Tax Court ruling below decided a consolidated case regarding a gold mining scheme entered into by appellants and others. It is reported as *Patin v. Commissioner*, 88 T.C. 1086 (1987). The relevant facts of the scheme are set out at length in that decision. The five taxpayer cases consolidated in the ruling below were selected by counsel and approved by the court to serve as test cases for resolving issues common to a much larger group of individuals who invested in the scheme. *Patin*, 88 T.C. at 1087–88. All five cases were decided against the taxpayers, who have appealed the decision to various circuits. Taxpayers Skeen and his wife have appealed to this court.

The principal issue is whether the Tax Court erred in finding that the Skeens entered into the gold mining program without a primary profit motive apart from the expected tax benefits. In this circuit we have articulated the standard that "the 'basic and dominant' motive behind the taxpayer's activities must be 'to make a profit or income from those very same activities.'" *Independent Elec. Supply, Inc. v. Commissioner*, 781 F.2d 724, 726 (9th Cir. 1986) (quoting *Hirsch v. Commissioner*, 315 F.2d 731, 736 (9th Cir.1963)).

The Skeens contend that the Tax Court improperly based its ruling on facts which the Skeens could have known only in hindsight, rather than focusing on their subjective intent at the time they made the investment. The proper focus of the test to be applied here is the taxpayer's subjective intent. *Independent Elec. Supply*, 781 F.2d at 726. However, objective indicia may be used to establish that intent. *Id.;* 26 C.F.R. § 1.183–2 (1988). The burden of proving the requisite profit motive is on the taxpayer. *Polakof v. Commissioner*, 820 F.2d 321, 323 (9th Cir.1987), *cert. denied,*

— U.S. ——, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988).

■ The Skeens are incorrect in asserting that the Tax Court imputed to them knowledge of facts that they did not have at the time they invested. While the Tax Court went to great lengths to describe and explain the scheme underlying this consolidated test case, including some facts that the taxpayers would not have known, its analysis of the Skeens' and the other investors' intent relies upon facts they knew when they invested, and upon their actions in investing.

The record demonstrates petitioners' complete indifference to the gold program's chances for economic success. We note that none of petitioners had any experience in gold or silver mining, nor were they actively involved in carrying out the program in which they invested. We, therefore, find significant the fact that petitioners chose to rely exclusively on the promoters' representations concerning the quantity and quality of ore reserves at [the gold mining sites]. Such reliance is remarkable in light of the fact (easily gleaned from the prospectus) that [the promoters'] representations were based upon sparse surface sampling performed by ... the owner of the mining properties. Yet petitioners did not attempt to verify such reserve estimates through qualified independent sources....

... Petitioners' claimed reliance on this "evidence" of rich ore reserves simply does not ring true. Moreover, we note that [the promoters'] claims as set forth in the prospectus are nothing short of fantastic in light of testimony by both respondent's and petitioners' experts that such claims, if true, would have meant that [the mine sites] were among the richest unmined deposits of gold then known to exist.

Petitioners are all sophisticated businessmen. We simply do not believe that they would enter into profit-motivated transactions with an unknown party and rely solely on the representations of such party with respect to the most crucial aspect affecting the viability of the proposed venture. Only the promised six-to-one tax deduction can adequately explain petitioners' entry into the gold program under such circumstances. See *Rice's Toyota World, Inc. v. Commissioner*, 81 T.C. [184], at 202 [ (1983) ].

*Patin*, 88 T.C. at 1118–19 (footnote omitted).

The Fourth Circuit in an unpublished decision swiftly disposed of a similar contention by another taxpayer appealing from the *Patin* decision. We are in full agreement with its analysis. The Fourth Circuit's per curiam, unpublished affirmance states in full:

The Tax Court held that a purported gold-mining investment scheme in which Gordon W. Hatheway participated was tax-motivated and without economic substance or business purpose. The court found that Hatheway did not enter into the scheme for the primary purpose of making a profit. Accordingly, the court sustained the Internal Revenue Service's ruling disallowing deductions claimed as a result of the scheme and assessing interest and penalties. Hatheway objects on appeal that the Tax Court, in attempting to divine his subjective intent when he entered into the disputed transaction, imputed to him knowledge which he did not then have.

While Hatheway's subjective intent is indeed the decisive factor, Hatheway cannot expect his own interested declarations as to his intent to be accepted without question. In attempting to determine whether Hatheway was motivated by tax or profit considerations, the court quite properly considered all the objective facts known to Hatheway, or which would have been known to anyone who had conducted even the most basic inquiries which an investor actually looking for profit would have undertaken.

We find no error of fact or law in the Tax Court's judgment. We affirm for the reasons stated in that court's careful

and extensive opinion, *Patin v. Commissioner*, 88 T.C. 1069 [1086] (1987).

*Hatheway v. Commissioner*, 856 F.2d 186 (4th Cir.1988).

■ In this case as in *Hatheway*, the Commissioner assessed an increased rate of interest against the Skeens for some of the years that their tax deficiency remained unpaid. Interest at an increased rate is assessed against any substantial underpayment of tax attributable to "tax motivated transactions." 26 U.S.C. § 6621(c) (Supp.IV 1986). The increased rate applies to interest accruing in the years 1985 and after. *See* Pub.L. No. 98–369 § 144(c), 98 Stat. 494, 684 (1984). A "tax motivated transaction" is defined by the statute as, *inter alia*, "any sham or fraudulent transaction." 26 U.S.C. § 6621(c)(3)(A)(v). The Tax Court found that the Skeens made their investment only to obtain tax benefits, and the court therefore rightly concluded that the Skeens entered into a tax-motivated sham transaction. Its assessment of the increased interest rate for the time period covered by the statute was proper.

■ The only difference between this case and *Hatheway* is that in addition to the deduction disallowance the Commissioner assessed a negligence penalty against the Skeens. A penalty may be assessed against a taxpayer where any part of an underpayment of tax is due to "negligence or disregard of rules or regulations." 26 U.S.C. § 6653(a) (Supp.IV 1986). The taxpayer has the burden of proving that he did what a reasonably prudent person would do under the circumstances. *See Hansen v. Commissioner*, 820 F.2d 1464, 1469 (9th Cir.1987). The Tax Court's determination that the taxpayer failed to meet his burden of proving due care is a finding of fact, reviewed for clear error. *See id.*

The penalty assessed here arises from deductions the Skeens took on their 1980 tax return. They claimed deductions for various amounts grouped in five categories relating to the mining operation. However, Mr. Skeen could not later recall how he arrived at any of those figures, recalling only that he was told by his tax accountant that the categories were "safe" ones.

Although Skeen may have relied upon the advice of his tax accountant, we find that such reliance was unreasonable under the circumstances of this case.

We have found that Skeen entered into the transactions without a business purpose, but with the hope of a return on his investments solely from tax benefits. It appears from Skeen's testimony that he relied upon [the accountant's] advice only as to whether the gold program and the deductions associated with it were plausible, and not as to their legality. In an obvious attempt to make such deductions more believable, [Skeen] reported them in five "safe" categories without knowledge as to whether such categories or the amounts reported in each category were correct. No reasonable and ordinarily prudent person would have done so under the circumstances. At the very least, such conduct constitutes negligence or intentional disregard of respondent's rules and regulations.

*Patin*, 88 T.C. at 1131.

Mr. Skeen also claims that he relied on advice given to him by co-workers whose experience he respected. However, no reliable evidence exists in the record suggesting the nature of the advice, if any, that he received from them. *Id.*

The Tax Court committed no error of law or fact. The decision of the Tax Court is AFFIRMED.