JAMES R. MATHESON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matheson v. Commissioner
Docket No. 25898-87
United States Tax Court
T.C. Memo 1991-394; 1991 Tax Ct. Memo LEXIS 459; 62 T.C.M. (CCH) 469; T.C.M. (RIA) 91394; August 13, 1991, Filed *459 Decision will be entered for the respondent. Bradford E. Henschel, for the petitioner. Louis B. Jack, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a $ 26,697 deficiency in the joint 1983 Federal income tax of James R. and Joanne Matheson, as well as an addition to tax under section 6661(a)[1] of $ 6,674; an addition to tax under section 6653(a)(1) of $ 1,335; and an addition to tax of 50 percent of the interest due on the underpayment under section 6653(a)(2). Respondent also determined that they were liable for an increased rate of interest on the underpayment pursuant to section 6621(c). The issues for decision are: (1) Whether petitioner is entitled to deductions arising from his purchase and development of an interest in the Silurian Tierra *460 Plana Mine; (2) whether petitioner properly raised the issue of the timeliness of the notice of deficiency; (3) whether collection of income tax revenues by the Internal Revenue Service is unconstitutional; (4) whether petitioner is liable for additions to tax under sections 6653(a)(1) and (2), and 6661(a); and (5) whether petitioner is liable for an increased rate of interest on the underpayment pursuant to section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found; the stipulation and the accompanying exhibits are incorporated herein by this reference. For calendar year 1983 James and Joanne Matheson filed a joint Federal income tax return with respondent's Fresno, California, office, which was received by it on May 24, 1984. Although respondent's statutory notice of deficiency was issued to them jointly on May 4, 1987, Joanne Matheson died on December 5, 1985, and no person has been appointed to represent her estate. At the time this petition was filed by James R. Matheson, petitioner resided in Torrance, California. Petitioner became a participant in the Silurian Tierra Plana mining program in 1983. The program involved the sale and extraction *461 of ore from a placer gold mine, referred to herein as the Silurian Mine. This mine was located in the dry lake bed beneath the Silurian Hills between Baker, California, and Death Valley. The program was marketed through the Dore Mining Company (Dore). Dore promoted the program through the use of prospectuses and by meeting with interested parties. Dore was controlled by Jack Fulton (Fulton) and Hal Nichols (Nichols). On December 27, 1983, petitioner signed several agreements. Pursuant to one agreement with Dore, petitioner agreed to purchase 10,000 cubic yards of ore bearing earth from the Silurian Mine in exchange for $ 5,000 and 40 percent of the gold and silver recovered from such ore. Petitioner's ore was not designated; instead he was to receive his ore on a "first come, first serve" basis. In another agreement (Development Agreement) petitioner agreed to pay $ 50,000 to Strategic Materials Resources (SMR) to cover the cost of developing the Silurian Mine. Pursuant to the terms of this agreement, SMR was to complete development of the mine within one year from the date of the agreement. Petitioner did not negotiate the cost of the development. Petitioner also entered *462 into a mining agreement with SMR in which SMR agreed to mine petitioner's ore in exchange for 25 percent of the gold and silver recovered from the ore. Petitioner and SMR also executed an agreement whereby petitioner assigned his interest in the Silurian ore to SMR. Under the terms of the assignment, SMR had the right to use the gold and silver extracted from petitioner's ore to pay off a promissory note, described more fully below. Petitioner executed another agreement in which SMR warranted that, if less than $ 22 of gold or silver per cubic yard was obtained from the ore petitioner acquired, SMR would mine and develop additional ore at a cost of one cent per cubic yard until the shortfall was eliminated. [2] Petitioner also acknowledged that he had received certain materials provided by Dore which addressed the tax treatment of the investment, and that he had an opportunity to review such material and to obtain independent legal and accounting advice regarding the Silurian Mine investment. *463 Petitioner, in consideration for the ore and the services to be rendered by SMR, gave Nichols $ 12,000 [3] and executed a $ 43,000 note payable to Edelmetal Ausland, A.G., Geneva (Edelmetal). According to a description of the Silurian Mine program, Edelmetal was to provide funds in the amount of the promissory note to SMR for the preparation of the mine as called for in the Development Agreement. Edelmetal never contacted petitioner, either prior to the execution of the promissory note or subsequent thereto. Nichols and Fulton were the principals of Edelmetal. The promissory note, including interest, was to become due in 1994, if not paid off earlier in either gold or silver recovered from petitioner's ore. Neither petitioner nor respondent has been able to locate the note. The record does not establish whether Edelmetal ever provided the funds in the amount of the note to SMR. Before entering into the aforementioned agreements, *464 petitioner reviewed promotional materials distributed by Dore regarding the Silurian Mine. One brochure, received by petitioner, stated that an investor could write off $ 100,000 by investing as little as $ 500 in the program, that a participant in the program could reduce his income taxes to zero, that the taxpayer could avoid withholding, and that the projected return from the investment was 800 percent, 400 percent guaranteed. The promotional materials also stressed that the cash portion of the investment could be financed out of tax savings derived from deducting the mining expenses related to the Silurian Mine investment, and that any promissory note executed in conjunction with the investment could be financed entirely out of gold and silver recovered from the ore. The brochure also contained assays allegedly done on ore from the Silurian Mine. The assays represented that gold was present in the samples examined. Petitioner did not verify whether the assays represented a true sampling of the gold and silver content of Silurian Mine. Dr. Brown, a mining expert retained by the Paladin Development Company (Paladin), [4] advised Paladin in 1984 to conduct proper testing to *465 determine the gold and silver content of the mine. Paladin's records did not substantiate the claims they and SMR made with respect to the presence of gold and silver in the Silurian Mine. The Silurian Mine was never in commercial operation. The equipment that was deployed at the mine was not suitable for the commercial extraction of ore. Instead, the machinery was of a type primarily used for testing. Although processing the ore required water, the Silurian Mine did not have a local supply. Instead, water had to be trucked in. Petitioner, a career airline pilot for United Airlines, testified that he relied upon his own knowledge of geology and mining, upon aerial observations of the Silurian lake bed conducted from the cockpit of United Airlines' jets, and upon the assays and information contained in the promotional materials in reaching his decision to invest in the Silurian Mine. Petitioner never personally visited *466 the mine. Petitioner accepted the terms of the program without negotiation. Petitioner did not investigate the backgrounds of either Fulton or Nichols. Petitioner did not conduct an independent investigation into the legitimacy of the deductions ascribed by the promoters as allowable to a participant in the mining program. Fulton had, prior to his involvement with the Silurian Mine, operated a business venture called Swiss Vaults, which served as a depositary for valuable items. In 1980, Fulton was convicted of thirty-one counts of grand larceny, conspiracy, and fraud arising out of the Swiss Vaults' promotion. The ore petitioner allegedly acquired has not been extracted, and petitioner has not contracted with any other party to extract and process his ore. On his 1983 return, petitioner deducted $ 1,200 in research expenses and $ 55,000 in expenses associated with the acquisition and development of his interest in the Silurian Mine. [5] Respondent disallowed those deductions on the ground, inter alia, that petitioner had not established that he had entered into the transaction with a profit objective. Respondent determined additions to tax for negligence or intentional disregard *467 of rules and regulations, pursuant to section 6653(a), and for the substantial understatement of income tax, pursuant to section 6661(a). Respondent also determined an increased rate of interest on the underpayment, pursuant to section 6621(c). OPINION The first issue for decision is whether petitioner is entitled to deductions for his 1983 investment in the Silurian Mine. Respondent determined that petitioner lacked a profit objective with respect to the alleged Silurian Mine investment, that no such claimed expenditures were incurred, or if incurred, were not allowable as ordinary and necessary business expenses, and, consequently, that petitioner was not entitled to any deductions with respect to such activity. Respondent's determinations in the notice of deficiency are presumed correct, and petitioner bears the burden of *468 proving such determinations to be incorrect. Rule 142(a). For reasons stated below, we are unpersuaded that petitioner had a profit objective with respect to his Silurian Mine activity, and hence sustain respondent's determinations related thereto. To qualify for a deduction under either section 616, 162, or 212, the activity giving rise to the expenditure must constitute an activity engaged in by the taxpayer with the "actual and honest objective of making a profit." Levy v. Commissioner, 91 T.C. 838, 871 (1988); Capek v. Commissioner, 86 T.C. 14 (1986). Cf. Horn v. Commissioner, 90 T.C. 908, 933 (1988); Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). A taxpayer's expectation of profit from the activity need not be reasonable, but he or she must have had the objective of making a profit. Fox v. Commissioner, 80 T.C. 972 (1983), affd. without published opinion 742 F.2d 1441 (2nd Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions *469 sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5-7, 9 (3rd Cir. 1984). Whether the activity has been entered into with the objective of making a profit is a question of fact. Allen v. Commissioner, 72 T.C. 28 (1979); Jasionowski v. Commissioner, 66 T.C. 312 (1976). Profit objective, in general, is determined by employing the objective factors outlined in the regulations under section 183. Beck v. Commissioner, 85 T.C. 557, 570 (1985). Section 1.183-2(b), Income Tax Regs., lists nine nonexclusive, objective factors that aid in determination of the profit objective. This Court, however, has held that the presence or absence of a profit objective with respect to a "generic tax shelter" is determined by analyzing the objective factors that go into a determination of economic substance along with those considered in analyzing profit objective under section 183. Rose v. Commissioner, 88 T.C. 386, 414 (1987), affd. 868 F.2d 851 (6th Cir. 1989). See also Horn v. Commissioner, supra; *470 Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). A generic tax shelter is defined as being any investment which involves the following characteristics: 1) Tax benefits were the focus of promotional materials; 2) the investors accepted the terms of purchase without price negotiation; 3) the assets in question consist of packages of purported rights, difficult to value in the abstract and substantially overvalued in relation to tangible property included as part of the package; 4) the tangible assets were acquired or created at a relatively small cost shortly prior to the transactions in question; and 5) the bulk of the consideration was deferred by promissory notes, nonrecourse in form or in substance. [Rose v. Commissioner, supra at 412.]
Petitioner has not persuaded *471 us that this investment was anything but a generic tax shelter. In the instant case, the promotional materials upon which petitioner relied emphasized that significant tax benefits were associated with the activity, that large income tax deductions would result from a minimal level of investment, and that the activity could be financed out of tax refunds. Petitioner accepted the terms of the program without negotiation. He received no tangible assets from his interest in the mining venture and failed to establish a value for the mineral and development rights he acquired. Lastly, a large part of petitioner's investment was in the form of a nonrecourse note. Petitioner did not personally deal with Edelmetal, the payee on the note, nor did Edelmetal ever contact petitioner regarding the alleged extension of credit in the amount of $ 43,000. Petitioner does not know where the note is, nor did petitioner establish that Edelmetal had ever provided funds to SMR on his behalf. Although the note was recourse on its face, we are unpersuaded that petitioner intended to or was legally bound to repay the note. Waddell v. Commissioner, 86 T.C. 848, 904 (1986), affd. *472 841 F.2d 264 (9th Cir. 1988). Where a transaction is categorized as a generic tax shelter, profit objective with respect to such investment is determined by examining the objective factors that tend to indicate whether the transaction in question has economic substance and that have been employed to ascertain profit objective under section 183. Rose v. Commissioner, supra at 415-416. The following factors are considered relevant to such determination: (1) The dealings between the taxpayers and other parties to the transaction; (2) the relationship between amounts paid by the taxpayers to the fair market value of the investment; and (3) the structure of financing used in the transaction. Horn v. Commissioner, supra at 931-932. As a preliminary matter, petitioner testified that his objective in investing in the Silurian Mine was to acquire gold and not tax benefits. Petitioner asserts that since his testimony was not controverted by respondent, his testimony regarding his profit objective satisfies petitioner's burden of going forward. However, "more weight must be given to the objective facts than to the taxpayer's *473 mere after-the-fact statements of intent." Capek v. Commissioner, supra at 37; Surloff v. Commissioner, 81 T.C. 210, 239 (1983). [6]
The dealings between petitioner and the other parties reflected a lack of profit objective. Petitioner accepted the terms of the program without negotiation. He made no independent investigation into the claims or backgrounds of the promoters of the Silurian Mine promotion and relied instead on the assertions found in the promotional materials. Petitioner never personally visited the site, nor did he know specifically what ore he was acquiring. See Patin v. Commissioner, supra.Petitioner *474 also did not determine whether the development costs were reasonable. Furthermore, although the Development Agreement called for development of the mine to take place within one year and petitioner was to receive his ore on a "first come, first serve" basis, petitioner did not take steps to make sure that Dore and SMR were meeting their obligations. To date, none of petitioner's ore has been mined. [7] The record establishes that petitioner acted in an unbusinesslike manner with respect to his Silurian Mine activity and was indifferent as to its success or failure. See Horn v. Commissioner, supra (gold mine investment lacked profit objective where taxpayers relied only on the promoter's brochure, blindly accepted the investment as a package deal, and presented no evidence as to the potential value of their interest in the gold mine); Patin v. Commissioner, supra; Thomas v. Commissioner, supra.
*475 Petitioner asserts that, based upon his family's involvement in mining and self-education, he had acquired sufficient knowledge to analyze the feasibility of the Silurian mining venture. Petitioner, a full-time pilot for United Airlines and nearing retirement at the time of the investment, however, failed to substantiate his claim by showing, among other things, any prior involvement in other mining ventures. We find unpersuasive petitioner's uncorroborated testimony as to his knowledge of mining. The second factor for consideration is the relationship between the amounts allegedly paid by petitioner and the fair market value of the investment. This requires a determination as to whether the income from the mining venture "would be sufficient to recoup petitioners' cash payments and pay off their notes." Horn v. Commissioner, supra at 937. Petitioner did not present any evidence attesting to the value of his interest in the Silurian Mine. Instead the testimony presented at trial supported respondent's position that the purchase price was unrelated to the fair market value of the investment. Dr. Brown, a mining expert retained by Paladin, testified that *476 he had advised Paladin to conduct better testing of the mine site to determine its gold and silver content. Respondent's expert witness, Mr. Rhoades, testified that he was unable to determine the value of the mine from the records provided by SMR. Petitioner has failed to persuade us that the purchase price of the gold mine interest was justified by the fair market value of the investment. The third factor to consider involves the structure of the financing. The use of deferred financing that contains terms that petitioner could not have obtained at arm's length from a bona fide financial institution or that is in substance not likely to be paid indicates a lack of economic substance. Knetsch v. United States, 364 U.S. 361, 5 L. Ed. 2d 128, 81 S. Ct. 132 (1960); Rose v. Commissioner, supra at 419, and cases cited therein; Patin v. Commissioner, supra at 1123. Here, payment of principal and interest were deferred for 10 years; the principal sum was secured only by the gold and silver recovered from the ore; the alleged payee did not require a credit check; and the note incorporated the terms of the agreements executed by petitioner as part *477 of the Silurian Mine program. Petitioner presented no evidence that Edelmetal had ever provided funds in the amount of the note to SMR. In addition, petitioner has not been forthright with respect to the note, claiming in an interview with respondent's agent that he had paid off the note, while testifying in court that the obligation was still outstanding. Petitioner has failed to persuade us that the note was not worthless, illusory, or that the instrument had economic substance. Based upon the entire record, the transaction lacked sufficient economic substance to support an objective finding that the petitioner had an actual and honest objective of making a profit. Petitioner, thus, is not entitled to any deductions with respect to his Silurian Mine investment. [8]
*478 The second issue for decision is whether petitioner properly raised the defense of the timeliness of the statutory notice of deficiency. The claim that the statutory notice of deficiency was issued after the expiration of the statute of limitations for the taxable year in question is an affirmative defense and not a plea to the jurisdiction of the Court. Robinson v. Commissioner, 57 T.C. 735, 737 (1972); Spielberger v. Commissioner, T.C. Memo 1989-444; Rule 39. Petitioner raised the issue of the timeliness of the statutory notice of deficiency for the first time on the day of the trial. Since petitioner failed to raise the issue in his pleading [9] such defense is deemed to have been conceded. Rule 34(b)(4).
*479 The third issue for decision is whether the collection of income taxes by the Internal Revenue Service is unconstitutional. Petitioner asserts that collection of taxes by the Executive Branch is an exercise of a core nondelegable legislative power. Although petitioner's argument appears novel, upon inspection it is a meritless issue "raised in, at best, misguided reliance upon lofty principles." McCoy v. Commissioner, 76 T.C. 1027, 1029 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Article I, Section 8 of the United States Constitution allocates to Congress the power to levy and collect taxes. However, the Executive Branch is specifically empowered to execute the laws of this land. U.S. Const. art. II, sec. 3. Once Congress makes its choice in enacting legislation its participation ends. "The structure of the Constitution does not permit Congress to execute the laws." Bowsher v. Synar, 478 U.S. 714, 726, 92 L. Ed. 2d 583, 106 S. Ct. 3181 (1986). Petitioner is correct in that Congress may not delegate its legislative power. Field v. Clark, 143 U.S. 649, 692, 36 L. Ed. 294, 12 S. Ct. 495 (1892). However, so long as Congress provides standards that prevent the Executive *480 Branch from exercising discretion as to what the law shall be, conferring authority upon the Executive Branch to execute such law does not violate the spirit of the separation of powers. J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, at 408-409, 72 L. Ed. 624, 48 S. Ct. 348 (1928); Field v. Clark, supra at 693-694; Avoyelles Sportsmen's League, Inc. v. Marsh, 715 F.2d 897, 916 (5th Cir. 1983). By enacting the Internal Revenue Code, Congress has determined the type of taxes that will be levied and their mode of collection; it has thereby exercised its legislative power. In such circumstances the administration of the Code by the Internal Revenue Service without more does not violate the Constitution. The fourth issue for decision is whether petitioner is liable for additions to tax under sections 6653(a)(1) and (2), and 6661(a). Section 6653(a)(1) provides an addition to tax for negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence *481 or intentional disregard of rules and regulations. Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinary prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The burden of proving that the addition to tax was erroneous is on the petitioner. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). We hold that petitioner has failed to prove that he was not negligent for purposes of section 6653(a)(1) and (2). Petitioner did not independently investigate the nature and substance of the gold mining investment nor did he research the validity of claiming a deduction for mining expenses in filing his 1983 return. He appears to have given no serious consideration to the deductibility of the amounts claimed herein. Under section 6661(a), a taxpayer is liable for an addition to tax in the amount of 25 percent of the amount of the underpayment attributable to a substantial understatement of tax. A substantial understatement arises where the understatement exceeds the greater of $ 5,000 or 10 percent of the correct tax liability. Sec. 6661(b)(1)(A). Since the *482 understatement exceeds both $ 5,000 and 10 percent of the correct liability, this condition is satisfied. Section 6661(b)(2)(C), in the case of items attributable to tax shelters, [10] provides for a reduction in the understatement for purposes of the section 6661(a) to the extent that there was substantial authority for such position, and the taxpayer reasonably believed that the tax treatment claimed on the return was more likely than not the proper treatment. In the instant case, petitioner relied only upon the legal opinion contained in the prospectuses and made no effort to obtain independent legal or tax advice regarding the legitimacy of his deductions. Furthermore, the very nature of the investment and the brochures' disclaimers should have provided petitioner with sufficient basis to conclude that a deduction *483 derived from such a transaction was questionable. Petitioner has not persuaded us that respondent's determination of an addition to tax under section 6661(a) is erroneous. The last issue for decision is the applicability of section 6621(c) as in effect for returns due prior to January 1, 1990. Under section 6621(c) the rate of interest on any substantial underpayment attributable to tax motivated transactions is 120 percent of the statutory rate determined under section 6621(a). A substantial underpayment attributable to tax motivated transactions is present to the extent an underpayment is attributable to tax motivated transactions and the amount of such underpayment attributable to such transactions exceeds $ 1,000. Sec. 6621(c)(2). A tax motivated transaction includes "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). Furthermore, the Secretary of Treasury has issued legislative regulations that include within the definition of a tax motivated transaction an activity lacking profit objective. Sec. 301.6621-2T, Q-4 and A-4, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). See also Patin v. Commissioner, supra at 1129. *484 Petitioner's participation in the Silurian Mine program was clearly a tax-motivated transaction. As such, section 6621(c) is applicable and we so hold. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Neither the warranty agreement nor the mining agreement was executed by SMR. Since respondent does not challenge the enforceability of these two documents, this Opinion assumes that these omissions, in themselves, do not affect the issue of profit objective.↩
3. The record is silent as to if, or how, the funds were distributed between Dore and SMR.↩
4. SMR and Paladin are related corporations concerned with the development of the Silurian Mine.↩
5. Petitioner failed to present any evidence to substantiate $ 1,200 in research expenses. It is apparent from petitioner's brief that he has conceded that this expense is not deductible.↩
6. Petitioner also argues that the transaction could not have been tax motivated since his cash payment was approximately as much as he saved in taxes. The notice of deficiency, however, belies that position, since as a consequence of claiming the mining deduction petitioner reduced his taxes by more than double his cash investment.↩
7. We note that while the eventual outcome of a mining venture is not determinative of the presence or absence of profit objective, nonetheless, it is a relevant factor in determining "whether there was an adequate preliminary investigation," and whether "the parties * * * possessed a bona fide intent to mine and sell" the ore for profit. Thomas v. Commissioner, 84 T.C. 1244, 1278 (1985), affd. 792 F.2d 1256↩ (4th Cir. 1986).
8. We note that our result would have been the same under the profit objective analysis of sec. 183 or under the facts and circumstances test. See Capek v. Commissioner, 86 T.C. 14 (1986) (sec. 183 analysis); and Thomas v. Commissioner, supra (facts and circumstance analysis). We note also that, since we have decided that petitioner is not entitled to the claimed deductions, we need not address respondent's alternative arguments for denying the deductions.↩
9. Petitioner failed to submit a trial memorandum as required by the pretrial order, in which he could have at least informed the Court of the issue and given it an opportunity to consider whether to allow an amendment of the pleadings at such a late date. See and compare Balunas v. Commissioner, F.2d , (3rd Cir. 1976, 1976 U.S. App. LEXIS 6710, 38 A.F.T.R.2d (RIA) 6167, 76-2 U.S. Tax Cas. (CCH) P9774↩).
10. Based on the record as a whole, we conclude that this investment was undertaken with the principal purpose of avoiding Federal income tax and thus constituted a tax shelter for purposes of sec. 6661↩.