85 F.3d 634
 77 A.F.T.R.2d 96-1159, 77 A.F.T.R.2d 96-497,
96-1 USTC P 50,117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 BALBOA ENERGY FUND 1981, Regional Resources, Inc., Tax
Matters Partner, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
Karen KUSTER, aka Karen G. Kuster, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
DRAKE ENERGY FUND 1983, Regional Resources, Inc., Tax
Matters Partner, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
Don A. KUSTER; Jane A. Kuster, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
Karen KUSTER, aka Karen G. Kuster, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
Don A. KUSTER; Jane A. Kuster, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
MESMUHU ENERGY PARTNERS, LTD., Regional Resources, Inc., Tax
Matters Partner, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
 
 Nos. 94-70260, 94-70264, 94-70275 to 94-70277, 94-70281, 94-70282.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided Feb. 28, 1996.
 Before: FLETCHER, CANBY and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We review the Tax Court's finding that certain oil and gas partnerships were not engaged in a trade or business and whether the Tax Court properly upheld the Tax Commissioner's imposition of additions to tax and additional interest against the partners.
 
 I. GENERAL BACKGROUND
 
 3
 The Commissioner sent petitioners Karen G. Kuster, Don A. Kuster and Jane A. Kuster notices determining deficiencies in income tax, additions to tax, and additional interest for the tax years 1981 and 1982. The deficiencies were attributable to the Commissioner's disallowance of certain deductions claimed as a result of the Kusters' participation as limited partners in Balboa Energy Fund 1981, Ltd. ("Balboa"), an oil and gas partnership. The Commissioner also sent petitioners Balboa, Drake Energy Fund 1983, Ltd. ("Drake") and Meshumu Energy Partners, Ltd. ("Meshumu"), all oil and gas partnerships, notices of final partnership administrative adjustments for the 1983 tax year.
 
 
 4
 Petitioners filed timely petitions in the Tax Court challenging the proposed deficiencies and partnership administrative adjustments. The parties stipulated that if the Tax Court's opinion was consistent as to Balboa and Drake (collectively, "the Partnerships"), which it was, the result would control all partnerships involved. The parties also stipulated that the application of penalties against V.E. Kuster Co., Inc. would control the penalty issues involving the other petitioners.
 
 
 5
 The Tax Court upheld the Commissioner's deficiency determination on the ground that Balboa and Drake were not engaged in a trade or business within the meaning of § 162 of the Tax Code because they lacked a profit objective. The Tax Court also concluded that V.E. Kuster Co., Inc. was responsible for additions to tax under § 6653 and 6661(c) and an increased rate of interest pursuant to section 6621(c). Petitioners timely appealed.
 
 II. FACTUAL BACKGROUND
 
 6
 Balboa and Drake were oil and gas partnerships established in the early 1980's by Roy Osterhout a CPA. Reserve Resources, Inc. ("Reserve") was the General Partner. Osterhout was Reserve's president. Private placement memoranda regarding these partnerships were sent to Osterhout's accounting clients. The memoranda emphasized the tax benefits of these programs.
 
 
 7
 Balboa and Drake entered into subleases with several drillers pursuant to which the drillers were paid a set price to drill wells. The drillers were also entitled to a minimum annual royalty ("MAR") upon execution of the sublease and every year thereafter unless or until the sublease was canceled or until the Partnerships exercised the option to purchase the wells. The payment of the minimum annual royalty could be deferred for 12 years; however, in order to defer payment, the Partnerships were required to deliver to the drillers Assumptions of Liability whereby each of the limited partners agreed to assume primary personal responsibility, to a stated maximum, for the payment of each limited partner's pro rata share of the deferred amounts. Any deferred amounts remaining unpaid at the end of twelve years were due and payable without interest at that time.
 
 
 8
 The drillers were also entitled to a set percentage of the oil and gas revenue, known as a production royalty, from which they were responsible for the disbursement of the existing overriding royalty interests. Prior to the due date of the deferred MAR payment, the payment of the production royalty was to be credited against the amount of deferred MAR owed.
 
 III. ANALYSIS
 
 9
 A. Legal Framework for Resolving this Appeal and Standard of Review
 
 
 10
 Section 162 of the Internal Revenue Code allows the deduction of ordinary and necessary expenses paid or incurred in connection with the operation of a trade or business. For an activity to generate deductions under § 162, the taxpayer must show " 'that the activity was entered into with the dominant hope and intent of realizing a profit.' " Vorsheck v. Commissioner, 933 F.2d 757, 758 (9th Cir.) (quoting Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir.1984)), cert. denied, 502 U.S. 984 (1991). In the case of a limited partnership, profit motive is determined at the partnership level. Vorsheck, 933 F.2d at 758.
 
 
 11
 The proper focus of the profit motivation test is on the taxpayer's subjective intent. Skeen v. Commissioner, 864 F.2d 93, 94 (9th Cir.1989). However, the court may consider objective factors in determining that intent. Id. A "taxpayer's venture is a trade or business if he has a good faith expectation of profit ... irrespective of whether or not others might view that expectation as reasonable." Mercer v. Commissioner, 376 F.2d 708, 711 (9th Cir.1967).
 
 
 12
 A finding that an activity is not undertaken for profit is a factual finding reviewed for clear error. Polakof v. Commissioner, 820 F.2d 321, 323 (9th Cir.1987), cert. denied, 484 U.S. 1025 (1988); Sochin v. Commissioner, 843 F.2d 351, 353 (9th Cir.), cert. denied, 488 U.S. 824 (1988). We will uphold the Tax Court's finding that an activity is not undertaken for profit unless we are " 'left with the definite and firm conviction that a mistake has been committed.' " Wolf v. Commissioner, 4 F.3d 709, 712 (9th Cir.1993) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). If the Tax Court's "account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." Wolf, 4 F.3d at 712-13 (internal citations omitted).
 
 
 13
 B. The Tax Court's finding that the partnerships were not engaged in for profit is not clearly erroneous.
 
 
 14
 The Tax Court's account of the evidence is plausible in light of the record viewed in its entirety, and, therefore, we will not disturb its ruling. Id.
 
 
 15
 We cannot find fault with the Tax Court's finding that the emphasis of the Partnerships' promotional materials on the tax benefits of the programs suggests a tax motivation. Other courts have found tax motivation apparent where, inter alia, tax benefits are the focus of promotional materials. See Ferrell v. Commissioner, 90 T.C. 1154, 1182 (1988); Rose v. Commissioner, 88 T.C. 386, 412 (1987), aff'd, 868 F.2d 851 (6th Cir.1989).
 
 
 16
 The record supports the Tax Court's finding that the Partnerships had a dominant motive of producing tax savings because the partners would benefit even if the Partnerships were not profitable. Petitioners concede that this finding is plausible assuming the deferred minimum annual royalty was not intended to be paid. We believe that the Tax Court's finding that the deferred minimum annual royalty was not intended to be paid at the end of 12 years is supported by (1) Mr. Osterhout's inability to recall the amount owed to a particular driller or to explain how it would be paid, and (2) Allen's failure to attempt to recover the minimum annual royalty due him. Petitioners contend that the Tax Court erroneously found the MAR liability to be illusory by failing to understand that it was intended to be paid in large measure through production. For the reasons explained below, we find that the Tax Court did not err in finding that the minimum annual royalty was unlikely to be paid through production due to unreasonable reserve and price assumptions. Moreover, we disagree with petitioners that the Tax Court erred in failing to note that a "significant" amount of the assumed liability was in fact paid through production. In the case of one of Balboa's subleases, the partners assumed a total MAR liability of $1 million dollars, of which a mere $41,671 was repaid through production. In the case of a sublease entered into by Drake, the MAR liability assumed by the partners was $882,000, of which only $286,444 was repaid through production.
 
 
 17
 The Tax Court's finding that an "oil and gas business conceived with the notion of making a profit would not obligate itself to these types of MAR payments" is supported by the testimony of the Commissioner's expert. That testimony established that the MAR so burdened the Partnerships' cash flow that, under reasonable reserve and price expectations, the Partnerships could not have been profitable.
 
 
 18
 Petitioners contend that the Tax Court clearly erred in finding that the "promotional values pertaining to the prospective oil and gas production were inflated" because the Tax Court failed to explain why it was "not convinced of the accuracy of the geology reports." The record, however, contains substantial evidence suggesting that the reserve estimates were inflated. For example, one report introduced at trial states that the estimate of 16,000 barrels of recoverable oil per well used for purposes of Balboa's financial projections "cannot be supported by actual prior drilling results" for the surrounding area. The report also concludes that the projections for the wells involved in the Drake venture were unrealistic.
 
 
 19
 Nor did the Tax Court clearly err in finding that the Partnerships' price projections were unreasonable. As the Tax Court noted, petitioners' expert's opinion regarding the reasonableness of Balboa's projection that oil prices would escalate 10% a year is unreliable because the 1982 survey upon which the expert based his opinion did not, as the expert stated, predict a 10% a year increase in gas prices. Also, the exhibit upon which petitioners rely in support of their argument that their price forecasts were within the range of normal price forecasting deviations is of little, if any, probative value in determining whether petitioners' 1981 and 1983 forecasts were reasonable. That exhibit sets forth price forecasts made in 1991 for the years 1991 through 2000.
 
 
 20
 The Tax Court did refer to a 1987 publication regarding historical oil prices as evidence that the Partnerships' price forecasts were unreasonable. The use of this publication, which was not in existence at the time the Partnerships were conceived, is not impermissible because the information in this publication upon which the Tax Court relied--the average price of gas in 1981 and 1982--was presumably in existence at the time the Partnerships were formed in late 1981 and 1983.
 
 
 21
 In conclusion, because we are not "left with the definite and firm conviction that a mistake has been committed," Wolf, 4 F.3d at 712, we will not disturb the Tax Court's decision affirming the Commissioner's deficiency determination.
 
 
 22
 C. The Tax Court erred in upholding the Commissioner's additions to tax pursuant to 26 U.S.C. §§ 6653 and 6661 but not in applying an increased rate of interest.
 
 
 23
 The Commissioner contends that we cannot hear petitioners' appeal regarding the Tax Court's imposition of additions to tax and an increased rate of interest because, as noted by the Tax Court, petitioners stipulated to be "bound" by the Tax Court's opinion regarding the application of the additions to tax and increased rate of interest in the case of V.E. Kuster Co., Inc. We find no reference to a waiver of appeal rights in the parties' stipulation. Waiver is not easily inferred. We will draw no such inference here. We interpret the agreement of the parties to be that the facts found in relation to V.E. Kuster Co., Inc. would be applicable to all, obviating duplicative proceedings before the Tax Court. Nothing suggests that petitioners waived their right to appeal the decision. Therefore, we address the merits of their arguments.
 
 
 24
 26 U.S.C. § 6653(a), prior to its amendment, provided for an addition to tax for underpayment due to "negligence," which was defined by reference to the reasonable person standard. Sammons v. Commissioner, 838 F.2d 330, 337 (9th Cir.1988). Petitioners contend that Kuster was not negligent because he relied upon the advice of Osterhout, his CPA for 22 years, the accounting firm of Cooper & Lybrand, which prepared the returns, and the tax opinions contained in the placement memoranda. Although a reasonable and prudent person is entitled to rely on the advice of qualified experts, Sammons, 838 F.2d at 337, the Tax Court is correct that petitioners' reliance on statements made by Osterhout was not reasonable because he was acting as a promoter. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988) (taxpayer who does no more than inquire of the promoter whether the investment is sound will not overcome the negligence penalty). Furthermore, petitioners fail to explain why the Tax Court clearly erred in finding that Kuster's meeting with tax advisors at Coopers & Lybrand was "perfunctory" and did not constitute a "meaningful investigation." See Norgaard v. Commissioner, 939 F.2d 874, 877 (9th Cir.1991) (reviewing the Tax Court's determination that petitioners are liable for additions to tax under § 6653(a) for clear error). Nonetheless, we conclude that the Tax Court clearly erred in finding that it was unreasonable for Kuster to rely on the tax opinion of Martin, Davis & Deacon contained in the placement memoranda. Absent some evidence that would tell a prospective investor that the opinion of a reputable CPA or law firm should be suspect, we find such reliance to be reasonable under the circumstances.[1] Consequently, we reverse the Tax Court's imposition of additions to tax pursuant to § 6653(a).
 
 
 25
 26 U.S.C. § 6661[2] imposed a penalty on a "substantial underpayment" of tax. In the case of "tax shelter" activity, a penalty could not be imposed where there "is or was substantial authority for such treatment" and the taxpayer "reasonably believed that the tax treatment of such item by the taxpayer was more likely than not the proper treatment." 26 U.S.C. § 6661(b)(2)(C)(i)(II). Such a belief could be established if the taxpayer in good faith relied on the opinion of a professional tax advisor that "unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld in litigation if the claimed tax treatment is challenged by the Internal Revenue Service." Reg. § 1.6661-5(d)(2).
 
 
 26
 Both the Balboa and Drake Memoranda included a detailed opinion of counsel stating that it was "more likely than not" that the courts would sustain the tax treatment of each item if challenged by the IRS. The Commissioner fails to explain why this opinion does not satisfy the requirements of Reg. § 1.6661-5(d)(2). Furthermore, the Commissioner's contention that reasonable taxpayers could not have believed that they could deduct expenses not attributable to a profit-making activity misses the mark. The real issue is whether a reasonable taxpayer could have believed that these partnerships would be considered profit-making ventures by the IRS. We find that in light of the above opinion, a reasonable taxpayer could have so believed.
 
 
 27
 Because petitioners are not subject to a penalty pursuant to § 6661(b)(2)(C)(i)(II), we need not decide whether the Commissioner abused his discretion in refusing to waive the penalty pursuant to § 6661(c).
 
 
 28
 Finally, 26 U.S.C. § 6621(c) (formerly 26 U.S.C. § 6621(d)) provides for a rate of interest on substantial underpayment attributable to certain "tax motivated transactions" at 120% of the normal underpayment rate. Pursuant to Reg. § 301.6621-2T, transactions not entered into for profit are treated as "tax motivated transactions." Because the Tax Court's finding that the Partnerships were not engaged in for profit is not clearly erroneous, neither is its decision upholding the Commissioner's decision to impose an increased rate of interest pursuant to 26 U.S.C. § 6621(c).
 
 
 29
 AFFIRMED in part and REVERSED in part. Each party will bear its own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Cf. Horn v. Commissioner, 90 T.C. 908, 941-2 (1988) (for purposes of § 6653(a), it was unreasonable for taxpayers to rely on opinions of accountants and others who were compensated by the promoter for the units sold to petitioners and, therefore, were not independent of the promotion)
 
 
 [2]
 26 U.S.C. § 6661 was repealed in 1989 but was in effect at all times relevant to this matter