T.C. Summary Opinion 2012-105

UNITED STATES TAX COURT

JOHN DALTON PARKS, III, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21600-11S, 21602-11S.        Filed October 25, 2012.

<u>Jan R. Pierce</u>, for petitioner.

<u>Kelley Blaine</u>, for respondent.

SUMMARY OPINION

GERBER, <u>Judge</u>:  These consolidated cases were heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petitions

were filed.[1]  Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  These cases involve income tax deficiencies for petitioner's 2006, 2007, and 2008 tax years of $1,120, $6,274, and $3,790, respectively.  The sole question for our consideration is whether petitioner's coaching activity constituted an "activity not engaged in for profit" within the meaning of section 183.

## Background

Petitioner resided in Tualatin, Oregon, at the time his petitions were filed. During December 1986 petitioner graduated from Auburn University (Auburn) with a bachelor of arts degree in communications/journalism and broadcasting. He received a master's degree in 1995 from the University of Montevallo with a certification in secondary education. He began his coaching career in 1984 as a student assistant track coach at Auburn and a coach at the Magic City Track Club. From 1988 to 1991 he served as the assistant track coach at Auburn, where he was responsible for, among other things, camps and clinics sponsored by Auburn.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In 1991 petitioner became the business manager of a sportswear business, and after one year he became the program coordinator for a speed development business named Sport Speed Development. In addition, petitioner was involved in writing and publishing, an activity which he began in high school and continued through the years in issue. He published freelance articles for various publications on track and field, and at one point he was the editor, publisher and owner of a cross-country running magazine named "The Harrier", which he later sold. In 2003 petitioner stopped publishing in print and became involved in Web-based publishing and established a Web site named "OregonRunners.com".

During the years in issue petitioner was a teacher and a high school and college athletic coach specializing in track. From August 1999 through May 2006 he was employed as a track coach at McKay High School (McKay) in Salem, Oregon. From February 2007 through June 2008 he was employed as a track coach at Stayton High School (Stayton) in Stayton, Oregon. After that he was employed as an assistant track coach at Portland State University in Portland, Oregon, from July 2008 through July 2009. As of the time of trial petitioner was a teacher at West Salem High School, assistant track coach at Oregon State University, and an athletic coach for Nike.

Beginning in 2006 petitioner discontinued his writing and publishing and began devoting a substantial portion of his nonemployment time to a private (after-school) track and field coaching activity. In October 2006 petitioner consulted with Loren Seagrave concerning ways to increase the profitability of his private coaching activity. Seagrave is recognized as an expert in sprint and power development and coaches several Olympic and world champion track athletes. Petitioner paid Seagrave for his advice, which was to speak at more regional and national clinics, training camps, and universities. He also advised petitioner to advertise and develop opportunities to enter the professional track ranks by showcasing the abilities of his most gifted runners.

After receiving Seagrave's advice, petitioner began focusing more on college and professional runners and started conducting more track camps and clinics. Petitioner also began focusing more time on J.P. Striders (a running club), which he ran from 2003 through 2008. Petitioner charged $125 to $200 per participant depending on the season. He usually had between 12 and 20 participants and hoped to expand that to 80 or 100. However, during 2006, petitioner lost the use of the McKay track facilities for his private coaching and had to use substandard facilities at Chemeketa Community College. In February 2007, although he continued to teach at McKay, petitioner became the track coach at Stayton and was able to use

the track facilities there for his private coaching. The travel between these locations and the loss of several of his private coaching athletes (caused by the loss of the McKay track facilities) were detrimental to petitioner's private coaching activity, and as a result his 2006 year was unprofitable. In spite of these setbacks, petitioner continued to pursue his private coaching activity.

Petitioner's 2007 year was also unprofitable because several of the athletes he was coaching at the time qualified for national meets, and he incurred large expenditures for travel to Indiana and North Carolina. Petitioner incurred those travel expenses because of his belief that national exposure of his athletes would eventually lead to more coaching opportunities including coaching professional athletes. Also, in 2007 petitioner opened a separate bank account solely for the use of his private coaching activity.

In order to promote his private coaching and improve his teaching employment, petitioner moved to Portland, Oregon, during August 2008 and became the assistant track coach for Portland State University. However, 2008 was unprofitable for reasons similar to those he encountered during 2007. His extensive travel during 2008 resulted in reduced income because he was away and could not run camps, clinics, etc.

In the summer of 2008 a gifted athlete named Ryan Bailey, whom petitioner had begun coaching in 2006, became a qualifier for the Olympic trials in Eugene, Oregon. Bailey ran the sixth-fastest time for an American runner in the 100 meters, and his race times indicated that he was one of the world's fastest runners in the 100- and 200-meter distances. In 2009 petitioner became Bailey's professional coach and manager and entered into a contract with Bailey which entitled petitioner to $5,000 for 2009 and $10,000 in subsequent years, plus a percentage of any bonus that Nike agreed to pay Bailey. As a result, petitioner's reputation and the quality of athletes he coached improved and continued to improve through the time of trial. As of the time of trial, petitioner had acquired a contract with Nike which will enhance his reputation and success as a track coach even further.

Petitioner's earned wages from his employment as a teacher and track coach during 2006, 2007, and 2008 of $55,755, $56,001, and $64,582, respectively. During the years in issue, petitioner maintained records for his private coaching activity on a computer, and he entered receipts of income from coaching contemporaneously on the computer. He also maintained all of his expense receipts for his activity and periodically recorded them on the computer.

Petitioner's income, expenses, and loss or gain from his private coaching activity for years 2003 through 2011 were as follows:

| Year | Gross receipts | Expenses | Loss or gain |
|------|----------------|----------|--------------|
| 2003 | $11,707 | $30,284 | ($18,577) |
| 2004 | 11,950 | 29,415 | (17,465) |
| 2005 | 9,115 | 27,531 | (18,416) |
| 2006 | 7,744 | 25,125 | (17,381) |
| 2007 | 5,785 | 38,646 | (32,861) |
| 2008 | 7,647 | 44,448 | (36,801) |
| 2009 | 5,000 | 9,057 | (4,057) |
| 2010 | 11,270 | 19,243 | (7,973) |
| 2011 | 16,925 | 16,882 | 43 |
| Total | 87,143 | 240,631 | (153,488) |

When petitioner's 2006 through 2008 tax returns were examined by respondent's agent, respondent did not adjust or reduce petitioner's expenses for all three years. Instead, respondent reclassified petitioner's expenses incurred in the conduct of his private coaching activity from Schedule C, Profit or Loss From Business, to Schedule A, Itemized Deductions, so that expenses in excess of income were not deductible, thereby generating the income tax deficiencies. The adjustment was based on respondent's determination that petitioner's private coaching activity was an "activity not engaged in for profit" within the meaning of section 183.

## Discussion

The sole question we consider in these consolidated cases is whether petitioner's private coaching activity was an "activity not engaged in for profit" within the meaning of section 183. If an individual engages in an activity but does not engage in that activity for profit, "no deduction attributable to such activity shall be allowed under this chapter except as provided in * * * [section 183]." Sec. 183(a). Section 183(b)(1) permits deductions which are otherwise allowable without regard to whether the activity is engaged in for profit, and section 183(b)(2) permits deductions which would be allowable if such activity were engaged in for profit, but only to the extent the gross income derived from the activity exceeds the deductions allowable by reason of section 183(b)(1). Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

In order for a deduction to be allowed under section 162 or section 212(1) or (2), the taxpayer must establish that he "engaged in the activity with 'the predominant, primary or principal objective' of realizing an economic profit independent of tax savings." Giles v. Commissioner, T.C. Memo. 2006-15 (quoting Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-

212); see Patin v. Commissioner, 88 T.C. 1086 (1987), aff'd sub nom. Skeen v. Commissioner, 864 F.2d 93, 94 (9th Cir. 1989).

Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.  In making this determination, more weight is accorded to objective facts than to the taxpayer's statement of intent. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979).

Factors to be considered in determining whether an activity is engaged in for profit include:  (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. All facts and circumstances are to be taken into account and no single

factor or group of factors is determinative. <u>Indep. Elec. Supply, Inc. v. Commissioner</u>, 781 F.2d 724, 726-727 (9th Cir. 1986), <u>aff'g</u> <u>Lahr v. Commissioner</u>, T.C. Memo. 1984-472; <u>Golanty v. Commissioner</u>, 72 T.C. 411, 425-426 (1979), <u>aff'd without published opinion</u>, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.

## I. The Manner in Which the Taxpayer Carries On the Activity

Petitioner began his coaching activity during 2003. He has kept records and for the years under consideration segregated the activity's banking and financial transactions from his personal transactions. He maintained receipts and concurrently entered the receipts of income and within a reasonable time transferred expense information to a computerized recordkeeping system.

Petitioner's educational background and extensive track and field coaching experience qualified him to train and coach track and field athletes. Initially, petitioner used his journalism training to publish a track and field magazine which he sold before the years in issue. Until 2006 petitioner spent two-thirds of his nonemployment time in journalistic pursuits. In 2006 he abandoned journalism as unprofitable and used all of his nonemployment time for private coaching. Initially, his efforts were impeded by employment-related events that limited his ability to be successful or profitable. The type of activity pursued

included camps, clinics, meets, and training and coaching a fairly large number of track and field athletes.

Eventually, he sought the professional advice of Seagrave, who advised him concerning approaches for a more successful and profitable coaching business. Essentially, Seagrave recommended that petitioner coach nationally known and professional athletes and that he gain more exposure by holding camps and clinics at regional, national, and university levels. Petitioner increased his advertising and set out to follow Seagrave's advice. Petitioner began coaching more athletes with higher potential, and at least one of the athletes he coached had a national and worldwide reputation.

Overall, petitioner's approach to his private coaching activity was businesslike, and he sought ways to improve his success, including the abandonment of his journalistic pursuits. Accordingly, we find this factor to be favorable to petitioner.

## II. The Expertise of the Taxpayer or His Advisers

There is no doubt in the Court's mind that petitioner has the expertise to coach track and field. Indeed, the parties do not dispute this fact, and this factor is favorable to petitioner.

III. <u>The Time and Effort Expended by the Taxpayer in Carrying On the Activity</u>

The question we consider under this factor is the amount of petitioner's personal time expended pursuing the activity. During 2006 through 2008 petitioner was employed as a full-time teacher, and he had coaching responsibilities connected with his teaching position. The amount of time expended on his private coaching depended upon whether he was coaching high school track. Normally, petitioner would spend 25 to 30 hours per week on his private coaching and a lesser amount when he had high school coaching responsibilities. In either situation, petitioner spent a substantial portion of his nonemployment time on the private coaching activity. During 2006 he spent six days traveling to track meets. During 2007 and 2008 his travel days increased to 32 and 36, respectively.

Petitioner's marriage and personal life were negatively affected by the fact that he devoted a large portion of his nonemployment time to his private coaching activity. Accordingly, we find this factor to be favorable to petitioner.

IV. <u>The Expectation That Assets Used in the Activity May Appreciate in Value</u>

No significant assets are used in connection with petitioner's activity, rendering this factor neutral.

V. <u>The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities</u>

Before 2006 petitioner did not carry on similar or dissimilar activities. Other than his publication activity, petitioner's source of income was his employment as a teacher and a coach. Accordingly, this factor is neutral.

VI. <u>The Taxpayer's History of Income or Losses With Respect to the Activity</u>

In the first three years of petitioner's coaching activity his gross receipts were approximately one-third of his expenses. For example, the gross receipts for 2005 were $9,115 and the expenses $27,531.

In 2006, the first year of the three in issue before the Court, petitioner's gross receipts were $7,744 and his expenses were $25,125. Petitioner explained these changes as attributable to a change in his modus operandi whereby he focused solely on coaching and pursuing college- and professional-level athletes. Also, during 2006 petitioner encountered logistical difficulties due to changes in his employment.

For 2007 and 2008 the gross receipts were in the same range as for 2006 and the expenses increased to $38,646 and $44,448, respectively. Here again, petitioner explained that he was implementing his new approach by traveling to more meets and seeking and developing college and professional level athletes. During the three years following the years at issue before the Court, petitioner's expenses dropped and gross receipts rose precipitously so that by 2011 he cleared a modest profit.

Although it appears that petitioner was attempting and succeeding in the pursuit of more profitable approaches to his coaching activity, the first five years in his activity resulted in continuous losses, causing this factor to weigh against petitioner.

## VII. The Amount of Occasional Profits, If Any, Which Are Earned

As previously discussed, petitioner had a series of losses and only one year with a nominal profit. Significantly, the trend shows increases in income, reduction of expenses, and more potential for profit. In addition, petitioner has positioned his coaching activity in a context that is more likely to provide financial success. Although petitioner has improved his potential for gain, the continued losses without meaningful gain are a factor that must weigh against petitioner in this analysis.

VIII. <u>The Financial Status of the Taxpayer</u>

During the years in issue petitioner was an educator/coach who earned an annual salary of $55,000 to $65,000 from his employment. Obviously, the expenses incurred in his private coaching activity were not intended to produce substantial tax benefits by the reduction of ordinary income. In these circumstances, it is more likely that the expenses were a financial hardship to petitioner, reducing the amount available for his living expenses. We accordingly find this factor to weigh in petitioner's favor.

IX. <u>The Elements of Personal Pleasure or Recreation</u>

Petitioner's professional and personal pursuit has always been teaching and coaching. This pursuit is difficult to label as a hobby, despite that fact that petitioner may derive personal pleasure from his involvement. On the basis of the amount of nonemployment time expended and the nature of the activity, we find that this factor weighs in petitioner's favor.

Summary and Holding

We set out to consider and decide whether petitioner is not engaged in an activity for profit within the meaning of section 183. To assist us in our consideration of that question, we analyzed the evidence in the record of these cases using the nine factors that have been set out for that purpose. Of the nine factors,

we found five favorable, two unfavorable, and two neutral. The unfavorable factors involved petitioner's history of income and losses and whether he earned profits. With respect to the unfavorable factors, we noted that petitioner's income was increasing, losses were decreasing, and his potential for success improving.

Ultimately, we find and hold that petitioner was engaged in his private coaching activity for profit for his 2006, 2007 and 2008 tax years and that his deductions are not limited by section 183. Accordingly, petitioner is entitled to deduct the excess of expenses over income (losses) from gross income for each year.

To reflect the foregoing,

Decisions will be entered

for petitioner.