T.C. Memo. 2010-208

UNITED STATES TAX COURT

ROBERT G. AND RHONDA L. SANDOVAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1305-09.                    Filed September 23, 2010.

<u>David R. Emerich</u>, for petitioners.

<u>Nicholas D. Doukas</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' 2004 Federal income tax of $43,346.  The issue for
decision after concessions[1] is whether petitioners are entitled

---

[1]Petitioners concede a $963 charitable contribution
deduction.

to a casualty loss deduction pursuant to section 165[2] for the
uninsured fire loss of a cabin in 2004.

                         FINDINGS OF FACT

     Some of the facts have been stipulated and are so found.
The stipulation of facts, together with the attached exhibits, is
incorporated herein by this reference.  At the time petitioners
filed their petition, they resided in California.

Construction Business

     From 1999 to 2006 petitioners owned and operated a
successful construction business, Robert Sandoval Construction,
Inc., that paid petitioners wages reported on Form W-2, Wage and
Tax Statement, of over $1.5 million in 2004 which resulted in
adjusted gross income reported on the return of $1,561,166.
Petitioners were responsible for all business aspects of their
construction business, including managing and hiring employees,
purchasing supplies and equipment, scheduling and bidding for
projects, obtaining licenses from municipal governments,
conducting background investigations of subcontractors, and
advertising.  Petitioners rented vacant land next to their home
to their construction company.

---

[2]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Amounts
are rounded to the nearest dollar.

Church Activities

From before 2004 to December 4, 2009, petitioner Robert Sandoval (Mr. Sandoval) was the pastor at United Pentecostal Church in Reedley, California (UPC). Petitioners have attended services at UPC since at least 1996. Mr. Sandoval's father was the previous pastor at UPC, and petitioners' children attend UPC services. Petitioners' son-in-law, Allen Nielsen, began attending services at UPC in 2002 and has served as UPC's youth leader since 2003.

Mr. Sandoval's duties as the pastor of UPC included overseeing the operation of the church, conducting church services, providing counseling services, and leading discussions and Bible studies. Petitioner Rhonda Sandoval (Ms. Sandoval) assisted her husband with operating the church, including offering counseling services and planning meetings. Petitioners also helped organize church-related trips to Disneyland and conferences for UPC parishioners.

Petitioners paid for all manner of church expenses from their personal checking account. In 2004 petitioners wrote 107 checks totaling over $30,000 from their personal checking account to cover UPC's expenses. The expenses included such items as Sunday school tables, the remodeling of the church's basement, trash hauling, advertising, and ministry dinners. Petitioners were not reimbursed for these expenses and claimed charitable

contribution deductions for them on their income tax return for 2004.

Property

On or about August 20, 2004, petitioners purchased property in Dunlap, California (the Dunlap property), for $177,800 via a personal check.  The property consisted of a cabin and the surrounding land.

One of petitioner's primary motivations in purchasing the Dunlap property was to use the cabin for UPC retreats.  Several other churches in the area were also interested in using the cabin for retreats.  Additionally, Ms. Sandoval held discussions with women from UPC about holding women's church retreats at the cabin.

Petitioners began improving the cabin after they purchased the Dunlap property.  Eight parishioners from UPC helped petitioners improve the cabin.  The parishioners were not paid for their labor.  Petitioners paid for improvements to the cabin from their personal checking account and with personal credit cards.

In August or September of 2004 Henry Torres, a neighbor and acquaintance of petitioners for 30 years, hauled supplies and equipment to the Dunlap property for the petitioners.  During this trip Mr. Torres told Mr. Sandoval that he would be interested in renting the Dunlap property for use as a retreat

for his business.  Mr. Sandoval and Mr. Torres never discussed any specific rental terms.

On August 15, 2004, at the suggestion of their certified public accountant, petitioners signed a document purporting to be a lease renting the Dunlap property to UPC for an undefined "rental session".  The lease was signed by petitioners as both the potential future owners of the Dunlap property and representatives of UPC.  The lease stated that the Dunlap property would be leased to UPC for a "teen camp, men's retreat & women's retreat."  The lease did not contain any rental terms or firm obligations.

The Dunlap property has always been titled in petitioners' name and was not insured against loss by fire or other casualty.  Before or during 2004 petitioners did not develop a written business plan for the property, advertise it for rent or hire a rental agent, prepare promotional materials, or form a business entity for the property.  Petitioners did not maintain a separate checking account.  No rent from the property was ever received.

During 2004 petitioners owned property in Goshen, California (Goshen property).  The Goshen property is a single-family residence that petitioners have owned since approximately 1987.  Before 2002 petitioners used the Goshen property as their primary residence.  During 2004 petitioners rented the Goshen property to a family member monthly.  No lease was executed.  Petitioners

received $4,200 in rent for the Goshen property in 2004. Aside from the single-family house in Goshen, their home and the adjacent land, and the property at issue, petitioners did not own any other real property in 2004.

Fire and Aftermath

On October 10, 2004, a fire swept through the Dunlap property. The fire caused damages of $100,000 to the cabin on the property and $50,000 to the contents of the cabin.

After 2004 the property was used for church group retreats and camping trips. Petitioners charged no rent for these activities.

Petitioners laid a foundation for a new house at the Dunlap property in December 2006. Petitioners began framing the new house in 2007. As of December 4, 2009, the new house had not been completed. Petitioners have done most of the construction work associated with the new house.

Deficiency

Petitioners filed a joint income tax return for 2004. On their return petitioners claimed a casualty loss deduction of $119,304 resulting from the fire.

On October 16, 2008, respondent issued a statutory notice of deficiency to petitioners that disallowed the claimed casualty loss deduction. On January 15, 2009, petitioners filed a

petition with this Court.  On December 4, 2009, a trial was held in San Francisco, California.

OPINION

Respondent determined that petitioners did not engage in rental activity on the Dunlap property with an intent to derive a profit and therefore disallowed petitioners' casualty loss. Petitioners contend that they purchased and improved the Dunlap property with an intent to derive a profit from church and corporate retreat rental activities and are therefore entitled to deduct from their gross income the casualty loss relating to the property.

Subject to certain limitations, any loss sustained during the taxable year and not compensated for by insurance or otherwise is deductible.  See sec. 165(a).  In the case of individuals, the losses deductible under section 165(a) are limited to (1) losses incurred in a trade or business, see sec. 165(c)(1), (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, see sec. 165(c)(2), and (3) with respect to property not connected with a trade or business or a transaction entered into for profit, a casualty or theft loss, see sec. 165(c)(3).  Subsection (h) of section 165 limits an allowable personal casualty loss under section 165(c)(3) to the amount by which the loss exceeds (1) $100 and (2) the sum of personal casualty gains plus 10

percent of the adjusted gross income of the individual. Petitioners' alleged casualty loss of $119,304 does not exceed 10 percent of their adjusted gross income of $1,561,581. Accordingly, they are precluded from obtaining a deduction under section 165(c)(3).

Petitioners bear the burden of proving that they are entitled to a loss under section 165. Remler v. Commissioner, T.C. Memo. 2005-265, affd. 255 Fed. Appx. 196 (9th Cir. 2007); see Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).[3]

In the case of an individual, section 165(c)(1) allows a deduction for an uncompensated loss incurred in a trade or business. To be engaged in a trade or business, an individual must be involved in an activity with continuity and regularity, and the primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A sporadic activity, a hobby, or an amusement diversion does not qualify. Id. Whether an individual is carrying on a

---

[3]The burden of proof with respect to a factual issue affecting a taxpayer's liability for tax may shift to the Commissioner under sec. 7491(a) if the taxpayer introduces credible evidence regarding the issue and establishes compliance with the requirements of sec. 7491(a)(2)(A) and (B) by substantiating items, maintaining required records, and fully cooperating with the Secretary's reasonable requests. As discussed below, we find that petitioners have failed to present credible evidence of an income-producing purpose for their Dunlap property activities or maintain adequate records. The burden of proof, therefore, does not shift to respondent under sec. 7491(a).

trade or business requires an examination of the facts involved in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941).

Section 165(c)(2) authorizes a deduction for losses, in the case of an individual, which are not compensated for by insurance or otherwise which are "incurred in any transaction entered into for profit, though not connected with a trade or business". The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent stipulation to the contrary, has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was to realize an economic profit independent of tax savings. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in evaluating a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or

recreation. <u>Indep. Elec. Supply, Inc. v. Commissioner</u>, 781 F.2d 724, 726-727 (9th Cir. 1986), affg. <u>Lahr v. Commissioner</u>, T.C. Memo. 1984-472; <u>Antonides v. Commissioner</u>, 91 T.C. 686, 694 n.4 (1988), affd. 893 F.2d 656 (4th Cir. 1990); <u>Golanty v. Commissioner</u>, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). No single factor or group of factors is determinative. <u>Golanty v. Commissioner</u>, <u>supra</u> at 426; <u>Dunn v. Commissioner</u>, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. A final determination is made by considering all facts and circumstances. <u>Indep. Elec. Supply, Inc. v. Commissioner</u>, <u>supra</u> at 727; <u>Antonides v. Commissioner</u>, <u>supra</u> at 694; <u>Golanty v. Commissioner</u>, <u>supra</u> at 426.

"The proper focus of the test * * * is the taxpayer's subjective intent. * * * However, objective indicia may be used to establish that intent." <u>Skeen v. Commissioner</u>, 864 F.2d 93, 94 (9th Cir. 1988), affg. <u>Patin v. Commissioner</u>, 88 T.C. 1086 (1987); see also <u>Wolf v. Commissioner</u>, <u>supra</u> at 713; <u>Indep. Elec. Supply, Inc. v. Commissioner</u>, <u>supra</u> at 726. The expectation of making a profit need not be reasonable. <u>Beck v. Commissioner</u>, 85 T.C. 557, 569 (1985); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); <u>Golanty v. Commissioner</u>, <u>supra</u> at 425-426. However, greater weight is given to objective facts than to a taxpayer's self-

serving statement of intent. Indep. Elec. Supply, Inc. v. Commissioner, supra; Antonides v. Commissioner, supra at 694; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). To make our determination, we address the nine factors found in section 1.183-2(b), Income Tax Regs. See Lowe v. Commissioner, T.C. Memo. 2010-129.

1.   The Manner in Which the Taxpayer Carries On the Activity

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Three common inquiries are considered in this context: (1) Whether the taxpayer maintained complete and accurate books and records for the activity; (2) whether the taxpayer conducted the activity in a manner substantially similar to those of other comparable activities that were profitable; and (3) whether the taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability. Giles v. Commissioner, T.C. Memo. 2005-28; sec. 1.183-2(b)(1), Income Tax Regs.

Maintaining complete and accurate books and records may indicate that an activity is a trade or business and engaged in for profit. Rozzano v. Commissioner, T.C. Memo. 2007-177. Petitioners did not keep any books or records of the rental activity. The only records introduced into evidence consisted of

exhibits showing the purchase of the Dunlap property, the damage caused by the fire, and a purported "lease" between petitioners and UPC with no specified rental payments.  Thus, petitioners have not shown that they maintained complete and accurate books and records of a Dunlap property rental activity.

Conducting an activity in a manner substantially similar to those of other activities of the same nature which are profitable may indicate that the activity is a trade or business and engaged in for profit.  Remler v. Commissioner, T.C. Memo. 2005-265.  Evidence of such similarity may include "advertising, maintaining a separate business bank account, the development of a written business plan, and having a plausible strategy for earning a profit."  Id.  Petitioners did not advertise, maintain separate bank accounts for a rental business, or develop a business plan.  They did not prepare any advertisements or promotional materials.  Petitioners bought the Dunlap property using personal checks and credit cards, and always titled the Dunlap property in their name.  Accordingly, they have not shown that they conducted a rental activity in a manner similar to those of other such activities that are profitable.

Changing operating methods, adopting new techniques, or abandoning "unprofitable methods in a manner consistent with an intent to improve profitability" may indicate that the activity

is engaged in as a trade or business for profit.  Giles v.
Commissioner, supra; see also sec. 1.183-2(b)(1), Income Tax
Regs.  Petitioners' Dunlap property rental activity has never
been profitable.  After the cabin was damaged in the fire,
petitioners did not attempt to rent out the remainder of the 160-
acre grounds.  Petitioners used the Dunlap property only for
charitable activities such as youth fishing trips and UPC men's
retreats, activities which, although admirable, did not yield a
pecuniary benefit.  Petitioners have not shown an intent to
improve profitability, nor have they shown that they carried on a
Dunlap property rental activity in a businesslike manner.

2.    The Expertise of the Taxpayer or His Advisers

"Preparation for the activity by extensive study of its
accepted business, economic, and scientific practices, or
consultation with those who are expert therein, may indicate that
the taxpayer has a profit motive where the taxpayer carries on
the activity in accordance with such practices."  Sec. 1.183-
2(b)(2), Income Tax Regs.

Petitioners did not conduct an extensive study or consult
with professionals before purchasing the Dunlap property.  Before
2004 petitioners' only experience related to the rental retreat
business was renting vacant land next to their home to their
construction business and renting the Goshen property to
relatives.

3. The Time and Effort Expended by the Taxpayer in Carrying
On the Activity

The fact that the taxpayer devotes much of his
personal time and effort to carrying on an activity,
particularly if the activity does not have substantial
personal or recreational aspects, may indicate an
intention to derive a profit.  A taxpayer's withdrawal
from another occupation to devote most of his energies
to the activity may also be evidence that the activity
is engaged in for profit. * * * [Sec. 1.183-2(b)(3),
Income Tax Regs.]

Petitioners' primary occupation in 2004 was managing their

lucrative construction business.

4. The Expectation That Assets Used in the Activity May
Appreciate in Value

"The term 'profit' encompasses appreciation in the value of

assets, such as land, used in the activity."  Sec. 1.183-2(b)(4),

Income Tax Regs.  Petitioners did not argue or produce evidence

to show that they bought the Dunlap property with the expectation

that it would appreciate in value.

5. The Success of the Taxpayer in Carrying on Other Similar
or Dissimilar Activities

"The fact that the taxpayer has engaged in similar

activities in the past and converted them from unprofitable to

profitable enterprises may indicate that he is engaged in the

present activity for profit, even though the activity is

presently unprofitable".  Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioners conducted limited rental activities by leasing

property for long periods to relatives and their construction

business.   No agreement was ever made to rent out the Dunlop

property.[4]

Petitioners' construction business was extremely profitable,

but dissimilar to their planned Dunlap property rental activity.

As discussed above, petitioners did not carry on a Dunlap

property rental activity for profit.

6.   The Taxpayer's History of Income or Losses With Respect
     to the Activity

>     A series of losses during the initial or start-up stage
>     of an activity may not necessarily be an indication
>     that the activity is not engaged in for profit.
>     However, where losses continue to be sustained beyond
>     the period which customarily is necessary to bring the
>     operation to profitable status such continued losses,
>     if not explainable, as due to customary
>     business risks or reverses, may be indicative that the
>     activity is not being engaged in for profit. * * *
>     [Sec. 1.183-2(b)(6), Income Tax Regs.]

Petitioners never profited from the Dunlop property.

7.   The Amount of Occasional Profits, if Any, From the
     Activity

"The amount of profits in relation to the amount of losses

incurred, and in relation to the amount of the taxpayer's

investment and the value of the assets used in the activity, may

provide useful criteria in determining the taxpayer's intent."

Sec. 1.183-2(b)(7), Income Tax Regs.   "[A]n opportunity to earn a

---

[4]Mr. Sandoval's retreat rental business plan was to rent the cabin and land on the Dunlap property to various churches and corporations for one-time events, each consisting of a lease term of several days or perhaps weeks.  This is distinct from renting a residence or business site to a single entity for several months or years at a time.

substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated." Id.

Petitioners paid $177,800 for the Dunlap property in 2004 and then spent substantial sums improving it. Petitioners never made a profit on the Dunlap property, but their conversations with UPC parishioners and other church officials led them to believe that the area would be desirable as a destination for church and corporate retreats. Petitioners also used the property to host various church retreats after 2004. However, petitioners never attempted to earn income to offset their investment in the property, even after hosting several successful camping trips on the site and having several years in which to repair damage done to the property by the fire.

8. The Financial Status of the Taxpayer

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Sec. 1.183-2(b)(8), Income Tax Regs.

Petitioners earned over $1.5 million in wages from their construction business in 2004. Those wages constitute

substantial income.  After 2004 petitioners used the property for church retreats and other charitable activities without charging rent, thus indicating that petitioners' activities regarding the Dunlap property fostered some personal or recreational elements.

9.   Elements of Personal Pleasure or Recreation

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved."  Sec. 1.183-2(b)(9), Income Tax Regs. Although arduous labor is not a prerequisite to deductibility, see Jackson v. Commissioner, 59 T.C. 312, 317 (1972), "the gratification derived from an occupation worth doing, possibly beneficial to others, and probably requiring long hours of arduous labor, must still not be confused with an intention to return a profit", White v. Commissioner, 23 T.C. 90, 94 (1954), affd. 227 F.2d 779 (6th Cir. 1955).

Petitioners have not shown that they have used the property in any way other than for the benefit of UPC and petitioners' community.  Petitioners drew up a purported "lease" of Dunlap property to UPC which listed no form of payment and have let church groups use the property for retreats and camping trips on several occasions without charging rent.  Ultimately, petitioners have not shown that their actions with regard to the Dunlap property were primarily intended to turn a profit.

After considering all of the above factors as applied to the facts and circumstances of this case, we conclude that petitioners' Dunlap property activity did not rise to the level of a trade or business pursuant to section 165(c)(1), and was not entered into with the intent to derive a profit pursuant to section 165(c)(2).

## Conclusion

As petitioners have not shown that they meet the requirements of any of the subsections of section 165(c), they are not entitled to deduct the loss resulting from the fire on the Dunlap property for 2004.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.