T.C. Summary Opinion 2011-111


UNITED STATES TAX COURT


PHILLIP DORIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25551-09S.             Filed September 19, 2011.


Phillip Doris, pro se.

<u>Audra M. Dineen</u>, for respondent.


HAINES, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

Respondent determined a deficiency of $6,824 and an accuracy-related penalty pursuant to section 6662(a) of $1,365 with respect to petitioner's 2006 Federal income tax. After concessions, the issues for decision are: (1) Whether petitioner is entitled to deductions claimed on Schedule A, Itemized Deductions, for unreimbursed employee business expenses; (2) whether petitioner is entitled to deductions claimed on Schedule C, Profit or Loss From Business, for expenses related to his kart racing activity; and (3) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. At the time petitioner filed his petition, he resided in California.

Petitioner is employed as a correctional officer by the State of California at San Quentin State Prison (San Quentin) and has held this position since 1982. In 2006 petitioner worked an average of 60 hours per week at San Quentin, earning wages of $178,528. As a correctional officer, petitioner is required to complete 40 hours of annual training covering, among other things, weapons qualification, use of pepper spray, use of force, sexual harassment, cell extractions, and gang activity. This

training is provided by the in-service training department at San Quentin to teach correctional officers the proper techniques to use on the job. Petitioner is also required to complete a quarterly weapons qualifications test. This test is conducted at San Quentin, and San Quentin provides all necessary weapons and ammunition for this test.

Correctional officers at San Quentin are required to purchase two types of uniforms. Class A uniforms, which are formal dress uniforms, must be worn by a correctional officer for certain types of activities, such as public posts, court details, the transportation of inmates, and other special events. Class B uniforms are more casual and consist of either a pair of jeans and a shirt or a jumpsuit.

Petitioner enrolled in additional self-defense instruction and practiced martial arts not required by San Quentin. He also purchased ammunition for personal use as well as tactical trousers, a radio holder, pepper spray, a baton, and a lapel. None of these purchases were required by San Quentin.

Petitioner spent much of his spare time at raceways and working on race karts (kart racing activity). Petitioner began racing karts in the early 1980s and enjoyed racing karts and being around speedways. In 2005 petitioner began offering karts to customers for rent. He used the name Doris Racing for this activity and charged $50 for 20-30 minutes of use of his karts.

Doris Racing was the first time petitioner tried to operate a kart racing activity or any other activity in this manner. Petitioner did not advertise Doris Racing in local publications.

Petitioner did not maintain a separate bank account for Doris Racing. Petitioner's records consist of handwritten notes and certain receipts related to Doris Racing. Petitioner's records were created at the end of every month. Petitioner did not keep a log in 2006 tracking his income and expenses from Doris Racing. Petitioner's kart racing activity never earned a profit, and in 2007 petitioner stopped operating Doris Racing.

On July 27, 2009, respondent issued a statutory notice of deficiency to petitioner denying his Schedule A deductions for unreimbursed employee business expenses and Schedule C deductions with respect to Doris Racing. On October 23, 2009, petitioner timely mailed his petition to this Court.

## Discussion

### I. Unreimbursed Employee Business Expenses

On his Schedule A, petitioner reported unreimbursed employee business expenses consisting of the following:

| | |
|---|---|
| Uniform purchases | $3,770 |
| Uniform cleaning | 2,360 |
| Subscriptions | 640 |
| Self-defense instruction | 5,965 |
| Weapons, range fees, and ammunition | 7,340 |
| | 20,075 |

Deductions are a matter of legislative grace, and the taxpayer must prove he is entitled to the deductions claimed. Rule

142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999). Respondent disallowed each of petitioner's above-listed deductions as personal. We consider each in the order listed.

1. Uniform Purchases and Uniform Cleaning

Petitioner claimed a deduction for uniforms purchased and uniform cleaning for his job as a correctional officer at San Quentin. Expenses for work clothing are deductible if the clothing or uniform is of a type specifically required as a condition of employment, the uniform is not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Wasik v. Commissioner, T.C. Memo. 2007-148; Beckey v. Commissioner, T.C. Memo. 1994-514.

Petitioner was required to purchase uniforms for his job at San Quentin, and we are satisfied that at least the class A uniforms required by San Quentin are not adaptable to general use and are not worn as ordinary clothing. Nonetheless, petitioner received a uniform allowance from San Quentin of $530 in 2006. A

uniform receipt for $309 was the only evidence petitioner produced outside of his own testimony to substantiate his claimed uniform purchase expense.  Because petitioner received an allowance in excess of his substantiated costs, he is not entitled to a deduction.

Petitioner's only evidence to substantiate his claimed uniform cleaning expense is a credit card statement showing an $18 dry cleaning charge.  The credit card statement does not state whether this expense was incurred to clean petitioner's uniforms.  Further, even if we were to assume this expense was incurred for that purpose, the $18 fits within petitioner's uniform allowance for 2006.  Accordingly, we sustain respondent's determination with respect to uniform purchases and cleaning.

2.   Subscriptions

Petitioner has failed to present any evidence to substantiate his $640 claimed deduction for subscriptions. Accordingly, we sustain respondent's determination with respect to the subscriptions.

3.   Self-Defense Instruction

Expenditures made by a taxpayer for education are deductible, with certain exceptions not relevant here,[2] if the education either:

> (1) Maintains or improves skills required by the individual in his employment or other trade or business; or

> (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

Sec. 1.162-5(a), Income Tax Regs.  Whether education maintains or improves skills required by the taxpayer in his business is a question of fact.  Boser v. Commissioner, 77 T.C. 1124, 1131 (1982), affd. without published opinion (9th Cir., Dec. 22, 1983); Joseph v. Commissioner, T.C. Memo. 2005-169.  The fact that a taxpayer's education is helpful to him in the performance of his duties does not establish that its cost is a deductible business expense.  Joseph v. Commissioner, supra.  Taxpayers must show that there is a direct and proximate relationship between the education expense and the skills required in their business. Boser v. Commissioner, supra at 1131.

Petitioner conceded at trial that outside self-defense instruction was not required by San Quentin.  He decided to take

---

[2]Otherwise qualifying expenses are not deductible if the education (1) is required in order to meet the minimum educational requirements for qualification in the taxpayer's employment, or (2) qualifies the taxpayer for a new trade or business.  Sec. 1.162-5(b), Income Tax Regs.

self-defense classes because he felt that the extra knowledge would help him deal with the dangers that come with working at a prison.  All correctional officers at San Quentin received 40 hours of annual training, including training on the use of force. Petitioner has failed to present any evidence describing the nature of his self-defense instruction and whether such training is consistent with the training required by San Quentin. Further, petitioner has not presented any evidence to substantiate the cost and amount paid for the claimed deduction. Accordingly, we sustain respondent's determination with respect to the self-defense instruction.

4.  Weapons, Range Fees, and Ammunition

Petitioner presented four documents to substantiate miscellaneous weapons expenses totaling approximately $385.  The first document is an invoice for an $85 expense related to petitioner's personal firearm.  Petitioner has not presented proof of payment with respect to this expense.  Accordingly, we sustain respondent's determination with respect to the firearm.

The second and third documents are receipts for purchases from Quartermaster, a uniform and equipment manufacturing company.  The first receipt, dated August 9, 2006, shows a payment of $102 with petitioner's credit card for tactical trousers, a radio holder, and pepper spray.  The second receipt, dated September 8, 2006, shows a payment of $173 with petitioner's credit card for two pairs of tactical pants, a

baton, and a lapel. Petitioner has substantiated that these expenses were incurred; however, he has not presented any evidence outside of his own self-serving testimony to establish that they were required for his job at San Quentin. Accordingly, we sustain respondent's determination with respect to petitioner's purchases from Quartermaster.

Next, petitioner presented a $26 receipt from Northbay Firearms for weapon cleaning. Petitioner conceded that this expense was incurred to clean his personal firearm. Accordingly, we sustain respondent's determination with respect to petitioner's expense at Northbay Firearms.

Finally, petitioner has failed to present any evidence of expenses incurred with respect to range fees or ammunition. Accordingly, we sustain respondent's determination with respect to range fees and ammunition.

## II. Petitioner's Kart Racing Activity

We must next decide whether petitioner's kart racing activity for 2006 amounts to a trade or business pursuant to section 162(a) and, if so, whether petitioner has substantiated his claimed deductions with respect to this activity. To be engaged in a trade or business, an individual must be involved in an activity with continuity and regularity and the primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A sporadic activity, a hobby, or an amusement diversion does not

qualify. <u>Id.</u> Deciding whether an individual is carrying on a trade or business requires an examination of the facts involved in each case. <u>Higgins v. Commissioner</u>, 312 U.S. 212, 217 (1941).

Under section 183(b)(2), if an individual engages in an activity without the primary objective of making a profit, deductions attributable to the activity are allowable only to the extent of gross income from the activity. See <u>Allen v. Commissioner</u>, 72 T.C. 28, 33 (1979). The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent stipulation to the contrary, has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was to realize an economic profit independent of tax savings. <u>Wolf v. Commissioner</u>, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. The taxpayer generally bears the burden of establishing that the activity was engaged in for profit. See Rule 142(a).

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in evaluating a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or

dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726-727 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Antonides v. Commissioner, 91 T.C. 686, 694 n.4 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. No single factor or group of factors is determinative. Golanty v. Commissioner, supra at 426; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. A final determination is made only after considering all facts and circumstances. Indep. Elec. Supply, Inc. v. Commissioner, supra at 727; Antonides v. Commissioner, supra at 694; Golanty v. Commissioner, supra at 426.

"The proper focus of the test * * * is the taxpayer's subjective intent. * * * However, objective indicia may be used to establish that intent." Skeen v. Commissioner, 864 F.2d 93, 94 (9th Cir. 1988), affg. Patin v. Commissioner, 88 T.C. 1086 (1987); see also Wolf v. Commissioner, supra at 713; Indep. Elec. Supply, Inc. v. Commissioner, supra at 726. The expectation of making a profit need not be reasonable. Beck v. Commissioner, 85

T.C. 557, 569 (1985); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); <u>Golanty v. Commissioner</u>, <u>supra</u> at 425-426.  However, greater weight is given to objective facts than to a taxpayer's self-serving statement of intent.  <u>Indep. Elec. Supply, Inc. v. Commissioner</u>, <u>supra</u> at 726; <u>Antonides v. Commissioner</u>, <u>supra</u> at 694; <u>Thomas v. Commissioner</u>, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).  To make our determination, we address the nine factors found in section 1.183-2(b), Income Tax Regs. See <u>Lowe v. Commissioner</u>, T.C. Memo. 2010-129.

1. <u>The Manner in Which the Taxpayer Carries On the Activity</u>

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(1), Income Tax Regs.  Three common inquiries are considered in this context:  (1) Whether the taxpayer maintained complete and accurate books and records for the activity; (2) whether the taxpayer conducted the activity in a manner substantially similar to those of other comparable activities that were profitable; and (3) whether the taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability.  <u>Giles v. Commissioner</u>, T.C. Memo. 2005-28; sec. 1.183-2(b)(1), Income Tax Regs.

Maintaining complete and accurate books and records may indicate that an activity is engaged in for profit. Rozzano v. Commissioner, T.C. Memo. 2007-177. Petitioner's recordkeeping system was limited to handwritten notes and various receipts in a file. Petitioner's handwritten notes were not produced contemporaneously with his activity but were produced once a month. Further, petitioner failed to maintain any records of his income and expenses from Doris Racing. Thus, petitioner has not shown that he maintained complete and accurate books and records for Doris Racing.

Conducting an activity "in a manner substantially similar to other activities of the same nature" can "indicate that the activity is engaged in for profit." Remler v. Commissioner, T.C. Memo. 2005-265. Indicators of such include "advertising, maintaining a separate business bank account, the development of a written business plan, and having a plausible strategy for earning a profit." Id. Petitioner did not present a written business plan for Doris Racing. Further, he admitted that he used his personal bank account and credit cards for purchases related to Doris Racing. Petitioner did not advertise locally, but he testified that he paid individuals in foreign countries to recruit clients. He further testified that he took promotional pictures of his clients on the racetrack. Petitioner failed, however, to present any substantive evidence of advertising. None of the individuals petitioner claims to have hired testified

at trial, and petitioner failed to present any documentation of the tasks performed by these individuals or proof that they were paid.  Petitioner also failed to describe how pictures of his clients on the racetrack were used for promotions or present any evidence of such promotions.  Accordingly, petitioner has failed to demonstrate that he conducted Doris Racing in a manner similar to other kart racing businesses.

Changing operating methods, adopting new techniques, or abandoning "unprofitable methods in a manner consistent with an intent to improve profitability" may indicate that the activity is engaged in for profit.  Giles v. Commissioner, supra; see also sec. 1.183-2(b)(1), Income Tax Regs.  Doris Racing was never profitable, yet petitioner never adopted new techniques, such as local advertising.  Petitioner abandoned Doris Racing because it was unprofitable without attempting to make any substantive changes to his alleged business model.  This does not demonstrate an intent to improve profitability.

Petitioner has not shown that he carried on Doris Racing in a businesslike manner.  Accordingly, this factor favors respondent.

2. The Expertise of the Taxpayer or His Advisers

"Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or

consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." Sec. 1.183-2(b)(2), Income Tax Regs. In analyzing this factor, a distinction must be drawn between expertise in the mechanics of an activity and expertise in the business practices of the activity. Zidar v. Commissioner, T.C. Memo. 2001-200 (citing Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523).

In Zidar v. Commissioner, supra, we held that a taxpayer's stock car racing activity was an activity not engaged in for profit where the taxpayer had a longstanding interest in stock car racing but no expertise in the economics or business of owning a stock car. The facts of this case are analogous: petitioner had a longstanding interest in kart racing, but there is no evidence that he studied or understood the accepted business practices of kart racing or consulted experts in the field. Petitioner testified that he had been involved in racing and had seen "how it works." He further testified he was familiar with what people in the kart racing business do. Petitioner's self-serving testimony does not establish an understanding of the kart racing business. Accordingly, this factor favors respondent.

3. <u>The Time and Effort Expended by the Taxpayer in Carrying On the Activity</u>

The time and effort devoted to an activity may indicate that the activity is engaged in for profit, particularly where the activity does not have a substantial personal or recreational aspect. Sec. 1.183-2(b)(3), Income Tax Regs.; see also <u>Sousa v. Commissioner</u>, T.C. Memo. 1989-581 (amount of time spent on a fishing and boating activity not necessarily indicative of profit objective where taxpayer derived great personal pleasure from the activity). A taxpayer's withdrawal from another occupation to devote most of his time to the activity may also indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(3), Income Tax Regs.

Although petitioner devoted a substantial amount of his spare time to his kart racing activity in 2006, the record reflects that he derived a great deal of personal pleasure from the activity. Accordingly, the amount of time petitioner spent on the activity is not necessarily indicative of a profit objective. Further, petitioner's primary occupation in 2006 was as a correctional officer for San Quentin. Petitioner worked at San Quentin approximately 60 hours per week, and he has not presented any evidence that his work schedule at San Quentin was scaled down because of the time he spent working on Doris Racing. Accordingly, this factor favors respondent.

4. <u>The Expectation That Assets Used in the Activity May Appreciate in Value</u>

"The term 'profit' encompasses appreciation in the value of assets, such as land, used in the activity."  Sec. 1.183-2(b)(4), Income Tax Regs.  Petitioner did not argue or produce other evidence to show that he bought assets for Doris Racing with the expectation that they would appreciate in value.  Accordingly, this factor favors respondent.

5. <u>The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities</u>

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable."  Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner does not have a history of carrying on similar activities.  His only other source of income was his job at San Quentin.  Accordingly, this factor favors respondent.

6. <u>The Taxpayer's History of Income or Losses With Respect to the Activity</u>

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit objective.  Sec. 1.183-2(b)(6), Income Tax Regs.; see also <u>Golanty v. Commissioner</u>, 72 T.C. at 426.  A series of losses during the startup phase of an activity does not necessarily indicate the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.

Doris Racing was never a profitable activity. However, lack of profitability in the startup stage is not unusual for a small business. Accordingly, we find this factor neutral.

7. <u>The Amount of Occasional Profits, If Any, From the Activity</u>

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Sec. 1.183-2(b)(7), Income Tax Regs. "[A]n opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated." <u>Id.</u>

As discussed above, Doris Racing was never profitable. Petitioner did not present a written business plan or demonstrate any strategic initiative towards making it financially successful. He has failed to present any evidence, including speculative evidence, that Doris Racing had the opportunity to earn a profit. Accordingly, this factor favors respondent.

8. <u>The Financial Status of the Taxpayer</u>

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or

recreational elements involved." Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner earned wage income of $178,528 from his job as a correctional officer at San Quentin. Because petitioner earned significant income from a source other than Doris Racing, this factor favors respondent.

9. Elements of Personal Pleasure or Recreation

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Sec. 1.183-2(b)(9), Income Tax Regs. "'[W]here the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity.'" Dodge v. Commissioner, T.C. Memo. 1998-89 (quoting Burger v. Commissioner, T.C. Memo. 1985-523), affd. without published opinion 188 F.3d 507 (6th Cir. 1999).

Petitioner conceded that he enjoys being involved in kart racing. He began racing karts in the early 1980s and has been around kart racing ever since. It is clear from the record that petitioner derived significant personal pleasure and recreation from Doris Racing. Accordingly, this factor favors respondent.

After considering all of the above factors as applied to the unique facts and circumstances of this case, we conclude that Doris Racing was an activity not engaged in for profit within the

meaning of section 183. As a result, we sustain respondent's determination with respect to petitioner's Schedule C deductions.

III. Section 6662(a) Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the amount of an underpayment attributable to negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to maintain adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioner's failure to produce records substantiating his Schedule A itemized deductions supports the imposition of the accuracy-related penalty for negligence with respect to those deductions for 2006. Further, petitioner's attempt to deduct expenses from a personal activity supports the imposition of the accuracy-related penalty for negligence with respect to his Schedule C deductions for 2006.

Section 6662(a) and (b)(2) imposes an accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax. The penalty is equal to 20 percent of the portion of any underpayment attributable to a substantial understatement of income tax. Id. The term "substantial understatement" is defined as exceeding the greater of: (1) 10 percent of the tax required to be shown on the return for the

taxable year or (2) $5,000.  Sec. 6662(d)(1)(A).  The applicability of section 6662(b)(2) will depend on the magnitude of the understatement of income tax as calculated under Rule 155. If petitioner's understatement of income tax as calculated under Rule 155 exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return in 2006, respondent will have met his burden of production under section 7491(c).  If not, respondent will have failed to meet his burden of production under section 7491(c).

An accuracy-related penalty is not imposed on any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The taxpayer bears the burden of proof with regard to those issues.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioner has failed to show reasonable cause, substantial authority, or any other basis for reducing the penalties.  Accordingly, we find petitioner liable for the section 6662 penalty for 2006 as commensurate with respondent's concessions and our holding.  See id. at 449.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.