T.C. Summary Opinion 2013-2

UNITED STATES TAX COURT

VINCENT P. BEIRNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29068-10S.                    Filed January 7, 2013.

Vincent P. Beirne, pro se.

<u>Nathan H. Hall</u>, for respondent.

SUMMARY OPINION

GERBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code in effect for the year in issue, and all Rule references are to the Tax Court
(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $3,581 income tax deficiency for petitioner's 2007 tax year. The deficiency is attributable to the disallowance of a deduction for $23,695 of expenses reported on a Schedule C, Profit or Loss From Business, attached to petitioner's 2007 return. The issues for consideration by the Court are: (1) whether petitioner was engaged in a business activity for profit; if he was, (2) whether he has substantiated expenses of his real estate activity reported on his Schedule C;[2] and (3) whether petitioner is entitled to an additional $10,580 deduction for charitable contributions during 2007.

Background

At the time his petition was filed, petitioner resided in California. Petitioner is originally from Ireland and obtained a license to practice law there in 1976. In 1987 petitioner immigrated to this country and became licensed to practice in California in 1988. Sometime in 1998 or 1999 petitioner decided to give up the

_____

[1](...continued)
Rules of Practice and Procedure.

[2]Petitioner did not report any income from his real estate activity, so it will not be necessary to decide whether he substantiated the expenses unless we decide that he was engaged in the activity for profit. See secs. 162, 183.

practice of law and became a real estate broker, believing that a career in real estate would be more lucrative than the practice of law. Initially, petitioner experienced some success in the real estate business.

Financially, 2007 was a difficult year for petitioner and his wife. As a result the mortgage on their home was foreclosed on and they had to file for bankruptcy. Because of their financial difficulties and shortly before declaring bankruptcy, petitioner and his wife moved from their home to rented space that was substantially less than one-half the size of their home. Because of the difference in size they attempted to sell, through a consignment shop, some of the furniture that would not fit in their smaller space.

The furniture that did not sell, along with items that were not on consignment, such as clothing, books, and other household goods, were donated, mostly to Goodwill. Using his own estimates of their value, petitioner contends that $10,580 of furniture and other property was contributed to charities and that this amount was not claimed as a charitable contribution deduction on their 2007 income tax return. Petitioner and his wife claimed $11,750 as itemized deductions on their 2007 income tax return.

Petitioner's wife was their primary source of income in 2007. Her 2007 Form W-2, Wage and Tax Statement, reports $69,070 in wages earned as an employee of

the City of San Rafael, $1,220 of which was withheld for California State income tax. Petitioner's and his wife's other sources of income reported on their 2007 return included: (1) interest of $273; (2) refunds of $347; (3) capital gains of $2,609; (4) taxable IRA distributions of $5,801; and (5) taxable Social Security benefits of $4,412. Petitioner reported a $23,695 loss on an attached Schedule C. The Schedule C activity was reported as "Real Estate Agent", and the reported loss comprised the following amounts:

| | |
|---|---|
| Advertising | $1,660 |
| Car and truck expense | 5,289 |
| Legal and professional | 2,880 |
| Office expense | 3,670 |
| Rent equipment | 3,430 |
| Repairs and maintenance | 540 |
| Supplies | 2,850 |
| Taxes and licenses | 380 |
| Utilities | 385 |
| Other expenses | 2,611 |
| Total loss claimed | 23,695 |

No income was reported on the Schedule C from the real estate activity.

Petitioner earned no fees or commissions during 2007 from his real estate activity. Petitioner occasionally attended open houses and tried to inspect commercial-type properties that were on the market, but he could not recall specific customers to whom he showed properties during 2007. Nor did petitioner provide any records indicating the names of potential clients.

The only record petitioner had reflecting his real estate activity was a receipt for a program entitled "Wealth and Self Conference" which he participated in during 2006 and into 2007. The focus of the program was to educate people about investing in real estate, by means of media such as Webinars. In addition to the educational aspects, the program was designed to generate income for participants if they recruited others. If a participant recruited another participant, some portion of the new participant's cost for the program would flow back to the recruiting participant. It was a pyramidlike arrangement where income exponentially increased on the basis of the breadth of the base below a participant. Initially petitioner was involved in phase 1 of the program, and he paid $5,995 during 2007 to move up to phase 2. Although petitioner paid $7 or $8 for names or leads of prospective participants, he was unsuccessful and made no money from his participation. Ultimately, the Wealth and Self Conference program collapsed. Petitioner reported the cost of his participation in this program as an expense on his Schedule C for 2007.

## Discussion

The first issue in this case is whether petitioner was in a trade or business activity for profit and therefore entitled to deduct expenses connected with his real estate activity. If we decide that he was in a trade or business activity for profit, the

second issue we must consider is whether petitioner's expenses have been substantiated and were ordinary and necessary expenses of the activity. Section 162(a) allows deductions for ordinary and necessary business expenses. To be deductible as business expenses, the expenses must be incurred in an activity conducted with continuity, regularity, and the purpose of making a profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). In the case of an activity not engaged in for profit, section 183 limits deductions to the amount of gross income from the activity. See sec. 183(b). Because petitioner had no income from the real estate activity, the seminal question is whether any of the claimed expense deductions from the activity may be used to reduce petitioner and his wife's reported gross income.

In order for a deduction to be allowed under section 162 or section 212(1) or (2), the taxpayer must establish that he "engaged in the activity with 'the predominant, primary or principal objective' of realizing an economic profit independent of tax savings." Giles v. Commissioner, T.C. Memo. 2006-15 (quoting Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212); see Patin v. Commissioner, 88 T.C. 1086 (1987), aff'd sub nom. Skeen v. Commissioner, 864 F.2d 93, 94 (9th Cir. 1989).

The facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit.  Keanini v.Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec.1.183-2(a), Income Tax Regs.  In making this determination, more weight is accorded to objective facts than to the taxpayer's statement of intent. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979).

Factors to be considered in determining whether an activity is engaged in for profit include:  (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation.  All facts and circumstances are to be taken into account, and no single factor or group of factors is determinative.  Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726-727 (9th Cir. 1986), aff'g Lahr v. Commissioner, T.C. Memo. 1984-472; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979),

aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. We use these factors as a guide to decide whether petitioner's real estate activity was profit motivated.

1. The Manner in Which the Taxpayer Carries On the Activity

Petitioner was a licensed real estate broker in 2007. He did not however provide sufficient evidence showing that he actively carried on his real estate activity in a businesslike manner. He testified that he occasionally checked properties, but was unable to identify any customers or provide evidence of his real estate activity. Petitioner earned no income from his real estate activity in 2007, and his testimony concerning it was vague and unpersuasive. Accordingly, this factor weighs against petitioner.

2. Expertise of the Taxpayer or His Advisers

Petitioner was a lawyer and a licensed real estate broker and had experienced some success in real estate transactions about seven years before 2007. We find that petitioner was generally experienced and that this factor is favorable for him.

3. Time and Effort Expended by the Taxpayer in Carrying On the Activity

Petitioner's testimony was not specific and was somewhat vague as to the amount of time and effort he expended in his real estate activity. He said that he

spent Tuesdays in San Francisco but did not detail what he did or how he used his time in pursuit of the activity. Because of the incompleteness of the evidence on this point, we find that this factor weighs against petitioner.

4. Expectation That Assets Used in the Activity May Appreciate in Value

Petitioner did not state that any appreciable assets were used in his real estate activity, and therefore this factor is neutral.

5. Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

Petitioner testified that he had been successful as a lawyer but he then decided that he could do better in real estate. He indicated that he had some good years in the late 1990s, but there is nothing in the record showing that petitioner's testimony is credible. We note that there is some inconsistency in petitioner's testimony that he was successful as a lawyer but switched to real estate sales. In addition, the lack of evidence of more recent success casts doubt on petitioner's claim to success in real estate about seven years before 2007. Here again, because of the incompleteness and inconsistency of the evidence, we find that this factor weighs against petitioner.

6 and 7. <u>Taxpayer's History of Income or Losses With Respect to the Activity and the Amount of Occasional Profits, If Any, Which Are Earned</u>

Other than his broadly stated and vague testimony on the subject, petitioner has not shown any pattern of income other than that he had little or no profit. The only explicit evidence on point is that petitioner had no income from his real estate activity during 2007. Accordingly, we find that these factors weigh against petitioner.

8. <u>Financial Status of the Taxpayer</u>

The only major source of income available to petitioner was his wife's salary of $69,070. The difference between that amount and the $23,695 in reported expenses from the activity does not indicate that his financial status was likely to motivate him to generate losses without potential for gain. We find that this factor is favorable for petitioner.

9. <u>Elements of Personal Pleasure or Recreation</u>

Because petitioner had so little income and, as a general matter, the business of real estate sales is not recreational or hobbylike, we find this factor favorable for petitioner.

Of the nine factors, five are unfavorable, three favorable, and one neutral. Overall, we find and hold that petitioner did not incur the expenses in an activity

conducted with continuity, regularity, and for the purpose of making a profit. It is therefore unnecessary to decide whether petitioner has substantiated the expenses reported on his Schedule C.

The third issue is whether petitioner is entitled to a $10,580 charitable contribution deduction in addition to the other itemized deductions claimed on the joint return. On the 2007 income tax return, petitioner claimed $11,750 of itemized deductions.[3] Respondent contends that the $11,750 amount closely approximates the $10,580 of charitable contributions that petitioner now contends that he did not deduct, plus the $1,220 withheld from petitioner's wife's wages as California income tax withholding. Those amounts appear to be the only itemized deductions available to petitioner and his wife for 2007. Petitioner has not produced evidence that he did not already deduct the $10,580 of charitable contributions, which respondent has not questioned or adjusted. It is the Court's view that petitioner is better off with respondent's allowance of the $11,750 because it is highly unlikely that the Court would have allowed as much, on account of the methodology used to value the contributed property and the lack of documentation with respect to the property's value. Accordingly, we hold that

---

[3]For married individuals filing jointly, the standard deduction for 2007 was $10,700.

petitioner is not entitled to any additional charitable contribution deduction for 2007.

To reflect the foregoing,

Decision will be entered for

respondent.